1  JOHN C.J. BARNES (State Bar No. 216694)
   W. SCOTT CAMERON (State Bar No. 229828)
2  **KING & SPALDING LLP**
   621 Capitol Mall, Suite 1500
3  Sacramento, CA 95814
   Telephone:     (916) 321-4800
4  Facsimile:     (916) 321-4900
   Email:  jbarnes@kslaw.com
5          scameron@kslaw.com

6  Attorneys for Defendant
   PST SERVICES, LLC
7

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES and the STATE OF          **CASE NO. 1:15-cv-00433-DAD-EPG**
   CALIFORNIA *ex rel*. NICOLE O'NEILL,
12
            Plaintiffs/Relator,
13
          v.                                **DEFENDANT PST SERVICES, LLC'S
                                            REPLY IN SUPPORT OF ITS MOTION
14                                          TO DISMISS THE FIRST AMENDED
   SOMNIA, INC., PRIMARY ANESTHESIA        COMPLAINT**
15 SERVICES, PST SERVICES, LLC, ROBERT
   GOLDSTEIN, M.D., ROY WINSTON, M.D.,
16 BYRON MENDENHALL, M.D., QUINN            Complaint Filed:  March 19, 2015
   GEE, M.D., and MARGARET VASSILEV,
17 M.D., and DOES 1 through 10, inclusive,
                                            **Date**:  Tuesday, November 7, 2017
18           Defendants.                    **Time:**  9:30 a.m.

19                                          **Judge:**  Hon. Dale A. Drozd

20

21

22

23

24

25

26

27

28

---

1

## TABLE OF CONTENTS

2
**Page**

3  INTRODUCTION ..................................................................................................... 1

4       A.    Relator's Opposition Focuses on Somnia and Misrepresents the

5               Limited Allegations Against PST. ................................................... 2

6       B.    Relator Cannot Plead Its Claims Against PST with Particularity. .................. 5

7              1.    Plaintiff Cannot Meet Its Pleading Burden Through
                       Generalized Assertions and Speculation That False Claims

8                      Might Have Been Submitted. ................................................ 5

9              2.    The "Controlling" Authority Cited By Relator Does Not
                       Control. .............................................................................. 8

10

11       C.    Relator Fails to Allege That PST Acted with Scienter .................................. 10

12  CONCLUSION ..................................................................................................... 13

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PST SERVICES, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................14

5

6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................14

7

8

*California Society of Anesthesiologists v. Superior Court (Brown)*,
    204 Cal. App. 4th 390 (2012) ............................................................................................7

9

10

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ............................................................................................13

11

12

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ................................................................................... *passim*

13

14

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ..........................................................................................16

15

16

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ..................................................................................................8

17

18

*Safeco Insurance Company of America v. Burr*,
    551 U.S. 47 (2007)..............................................................................................................15

19

20

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..............................................................................................8

21

22

*United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ............................................................................................8

23

24

*United States ex rel. Chorches for Bankruptcy Estate of Fabula v. American*
    *Medical Response, Inc.*,
    865 F.3d 71 (2d Cir. 2017)........................................................................................11, 12

25

26

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ...................................................................................4, 8, 15

27

28

*United States ex rel. Grayson v. Genoa Healthcare*,
    No. C09-506Z, 2011 WL 2670079 (W.D. Wash. 2011)....................................................9

PST SERVICES, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

*United States ex rel. Grubbs v. Kanneganti,*
    565 F.3d 180 (5th Cir. 2009) ............................................................................8, 12

*United States ex rel. Hagood v. Sonoma County Water Agency,*
    929 F.2d 1416 (9th Cir. 1991) ...............................................................................15

*United States ex rel. Hendow v. University of Phoenix,*
    461 F.3d 1166 (9th Cir. 2006) ...............................................................................14

*United States ex rel. Hopper v. Anton,*
    91 F.3d 1261 (9th Cir. 1996) .................................................................................14

*United States ex rel. Serrano v. Oaks Diagnostics, Inc.,*
    568 F. Supp. 2d 1136 (C.D. Cal. 2008) ...................................................................9

*United States ex rel. Swoben v. United Healthcare Insurance Co.,*
    848 F.3d 1161 (9th Cir. 2016) ...............................................................................11

*United States ex rel. Walker v. R&F Properties of Lake County, Inc.,*
    433 F.3d 1349 (11th Cir. 2005) .......................................................................12, 13

*Universal Health Services, Inc. v. United States ex rel. Escobar,*
    136 S. Ct. 1989 (2016).............................................................................................13

**Statutes**

31 U.S.C. § 3729.......................................................................................................13

**Other Authorities**

65 Fed. Reg. 65413  ..................................................................................................15

Federal Rule of Civil Procedure 9(b)................................................................. *passim*

**PST SERVICES, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**INTRODUCTION**

Relator Nicole O'Neill worked as a nurse who, through a contract with Somnia,[1] provided anesthesiology services to patients at Kaweah Delta Medical Center ("Kaweah").   FAC ¶ 18.  She did not have any employment relationship with PST Services, LLC ("PST").   She has no personal knowledge of PST's billing procedures, how PST personnel reviewed information in medical records, how bills were generated, or what invoices were sent to the government for anesthesia services at Kaweah.

That makes it difficult, if not impossible, for Relator to plead a viable False Claims Act case against PST.  Rule 9(b) demands that she plead her claims with particularity, identifying the "who, what, when, were, and how" of the fraud.  *Ebeid ex rel. United States v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010).   When, as here, a relator cannot identify even a single representative example of a false claim, a relator must plead "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 998-99 (citation omitted).   Moreover, she cannot simply lump together Somnia and PST.  Instead, Rule 9(b) requires her to differentiate her allegations and plead facts that make it plausible, not merely possible, that PST knowingly submitted false claims. *See United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011).

PST moved to dismiss the First Amended Complaint ("Complaint" or "FAC") because Relator failed to plead her claims against PST with particularity and because she failed to plead any non-conclusory allegation that PST acted knowingly.   Relator's brief in opposition underscores how very little Relator actually pleaded with respect to PST.  Instead of identifying allegations in the Complaint to rebut PST's arguments, Relator makes newfound factual assertions found nowhere in the Complaint.  She also attempts to excuse her failure to plead her claims against PST with particularity by asserting that "Controlling Precedent Does Not Require Every Relator To Be Intimately Familiar With The Particulars Of Defendant's Fraudulent Billing Scheme."  Mem. in Support of Relator's Opp. to PST Mot. to Dismiss FAC ("Opp.") at 7:20-23.

---

[1] Relator's Opposition refers to Somnia and Primary Anesthesia Services collectively as "Somnia."  We also use that convention here.

1

Ironically, in support of her argument about what "controlling precedent" requires, she does not cite a single case from the Ninth Circuit and presses an argument that the Ninth Circuit has rejected.

Putting aside whether Relator must be "intimately" familiar with PST's so-called "fraudulent billing scheme," she must at least allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998-99. That she cannot do. Instead she offers speculative assertions based on second-hand information. The Complaint fails to meet the pleading standards for a claim under either the California or federal false claims acts. This Court should grant PST's Motion to Dismiss.

## A.    Relator's Opposition Focuses on Somnia and Misrepresents the Limited Allegations Against PST.

In opposition to PST's Motion to Dismiss, as in the Complaint, Relator spills substantial ink describing allegations against Somnia. *See, e.g.*, Opp. at 2:10-4:6. Indeed, most of the Relator's "Summary of Factual Allegations" recites claims against Somnia and its associated doctors. *Id.*

When it comes to PST, Relator's Opposition indicates that she has tapered her claims. The Complaint asserts that "[t]he gravamen of this case is that Defendants were knowingly billing the Government at a higher rate for 'medically directed' anesthesia services when they should have been billed under the 'medical supervision' category" (FAC ¶ 39) and it makes numerous allegations relating to why Somnia doctors should not have been coding certain procedures as "medically directed" based on the activities of individual doctors at Kaweah. Relator's Opposition, however, states that the "gravamen" of the case against PST is that PST "acted in reckless disregard of the truth in automatically converting inappropriate Somnia, Inc./Primary Anesthesia Services ('Somnia'), billing for Medical Direction to Independent CRNA Practice billing." Opp. at 1:12-15.[2]

---

[2] "CRNA" stands for Certified Registered Nurse Anesthetist.

2

**PST SERVICES, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Relator claims to have painted a "clear picture of the details of PST's fraudulent billing scheme" (Opp. at 3:23-4:6) through two sets of allegations:

(1)     "Karen Berkey admitted to Relator that she had resorted to using the Independent CRNA practice coding when PST's system alerted her that Somnia had billed more than four Medical Direction cases for the same anesthesiologist's time. Ms. Berkey did no research or investigation to determine whether the CRNA in question was supervised in any way, but simply defaulted to the more lucrative Independent CRNA Practice Coding." Opp. at 3:25-4:1; *see also* FAC ¶¶ 102-03.

(2)     "[A]nother PST employee confirmed to Ms. O'Neill directly that PST has a consistent policy of charging the government the higher yielding Independent CRNA Practice rate instead of the less profitable Medical Supervision rate without doing any investigation whatsoever to determine whether the CRNAs in question were actually supervised." Opp. at 4:2-6; *see also* FAC ¶¶ 126-28.

The factual allegations in the Complaint related to the first instance, which can be found in paragraphs 102 and 103, bear little resemblance to the claims in the Opposition brief. The Complaint alleges that a PST employee, Karen Berkey, alerted Somnia to "issues where there was a doctor personally performing 'when he/she should be medically directing[,] which causes errors, or where they are medically directing 5 rooms at once.'" *Id.* ¶ 102 (emphasis omitted). PST asked Somnia to resolve these issues because PST "cannot post any charges for the entire date of service until these errors get resolved." *Id.* Somnia responded that "in accordance with CA and Federal Law[,] CRNAs can be operating independently." *Id.* One of Ms. Berkey's co-workers confirmed that Somnia "was correct, 'CRNAs may work independently in the state of California.' She directed them to 'Please disregard Karen's email below, we are able to process the below mentioned cases as non-medically directed CRNA . . . .'" *Id.* ¶ 103 (emphasis omitted).

In short, a PST employee flagged a potential issue, refused to post any charges until the issue was resolved, and confirmed—both internally and with Somnia—how to process the claims properly. In contrast to the statements in Relator's Opposition, the Complaint: (1) does not

3

allege that Ms. Berkey "admitted" anything to Relator (or had any personal contact with her whatsoever);[3] (2) contains no allegations concerning whether Ms. Berkey did or did not do other research; and (3) expressly contradicts any assertion that Ms. Berkey "defaulted" to CRNA Independent Practice Coding, instead alleging that it was concluded that such claims may be processed as non-medically directed CRNA only after that coding was confirmed to be appropriate.  Moreover, there is no allegation that the events described in paragraphs 102 and 103 resulted in the generation of any bill, what that bill stated, what patient was involved, or whether that bill was sent to a government payer.

Although Relator's Opposition asserts that PST "implemented this scheme across the board" and falsely billed "all of the problematic cases as CRNA Independent" (Opp. at 7:13-16) the Complaint makes no such factual allegation regarding billing for services rendered by Somnia.  Further, Relator does not dispute that Certified Registered Nurse Anesthetists are permitted to work independently in California.  *See, e.g., Cal. Soc. of Anesthesiologists v. Super. Ct. (Brown)*, 204 Cal. App. 4th 390, 394-95 (2012);  FAC ¶ 47.

The other PST-related allegation described in Relator's "Summary of Factual Allegations" is a red herring.  Relator, after her contract with Somnia was terminated, called McKesson's "main line" "posing as an anesthesiologist exploring their billing options" "on behalf of a hospital in Alabama."  FAC ¶ 126; *see also id.* ¶¶ 127-28.  Nothing about this alleged telephone call concerned billing practices regarding Somnia, Kaweah, or any medical center operating under the laws of California.  This allegation cannot possibly support an inference that PST knowingly submitted false claims in connection with its work in California with Somnia.  Any conclusions that Relator might have drawn from this conversation are based wholly on speculation.  The False Claims Act is designed to "encourage insiders to disclose information necessary to prevent fraud on the government" (*Ebeid*, 616 F.3d at 999), not to encourage terminated employees to seek a bounty based on speculation arising from information obtained after-the-fact through pretext.  The particularity requirement of Rule 9(b) would be rendered a

---

[3] The Complaint does not allege that Relator received any of the emails described in paragraphs 102 or 103.

nullity if this sort of speculative allegation could provide a license to allege fraud and a ticket to discovery.

According to Relator, the "dual admissions" described above "demonstrate that it is highly likely that false bills were submitted to the government for payment."  Opp. at 9:14-15. These allegations, however, fall far short of providing the "particular details of a scheme to submit false claims" and "reliable indicia that lead to a strong inference that claims were actually submitted" that the law requires.  *See Ebeid*, 616 F.3d at 998-99.  Indeed, the limited allegations concerning PST provide almost no particular details of the alleged scheme and furnish no reliable indicia that false claims were actually submitted by PST.

**B.     Relator Cannot Plead Its Claims Against PST with Particularity.**

**1.     Plaintiff Cannot Meet Its Pleading Burden Through Generalized Assertions and Speculation That False Claims Might Have Been Submitted.**

Plaintiff does not dispute that its claims are subject to the heightened pleading standard of Rule 9(b).  Opp. at 4:11-26.  To comply with Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).  "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  *Corinthian Colleges*, 655 F.3d at 997-98 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

The False Claims Act attaches liability not to the underlying fraudulent activity, but to the claim for payment.  "[A]n actual false claim is the *sine qua non* of an FCA violation." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal brackets and citations omitted).  For that reason, a relator must plead, at a minimum, "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  *Ebeid*, 616 F.3d at 998-99

5

1    (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

2         The Complaint does not satisfy these requirements.  Relator contends that she met the

3    demanding standard of Rule 9(b) through the so-called "dual admissions" described above and

4    because the "complaint makes clear that defendant submitted hundreds, if not thousands, of bills

5    to the Government wherein it falsely claimed that services were performed either under the

6    medical direction of a physician or independently by a CRNA."  Opp. at 6:16-18.  First, the

7    Complaint does not make clear that "hundreds" or "thousands" of false claims were submitted by

8    PST; it is silent on how many false claims PST is alleged to have submitted.  Second, those types

9    of broad allegations and generalized speculation are exactly what Rule 9(b) is designed to

10   prevent—indeed Relator cannot even state whether her allegations concern "hundreds" or

11   "thousands" of claims.  "[G]eneral allegations that all claims submitted" were fraudulently

12   submitted during a particular period are "insufficient particularity to satisfy the 9(b) pleading

13   standard."  *United States ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F. Supp. 2d 1136, 1143

14   (C.D. Cal. 2008) (dismissing False Claims Act case based on Medicare fraud for failure to satisfy

15   Rule 9(b) even though the complaint incorporated a chart showing each of the alleged 1393 false

16   claims and the date, internal control number, referring physician, amount billed, and amount paid

17   for each of the claims but did not identify the dates of service, an example of tests performed, a

18   single patient involved in the tests, or the parties to the misrepresentation).

19        The recent application of *Ebeid* and other Ninth Circuit precedent in *United States ex rel.*

20   *Grayson v. Genoa Healthcare*, No. C09-506Z, 2011 WL 2670079 (W.D. Wash. 2011), is

21   instructive.  The court held that a False Claims Act complaint alleging three types of Medicare

22   fraud failed to satisfy the pleading requirements of Rule 9(b).  *Id.* at *2-4.  First, the court ruled

23   that allegations that three Oregon pharmacies "routinely waived copayments" and "fill[ed]

24   approximately 1,500-2,000 prescriptions for Medicare beneficiaries per month" were not enough

25   to provide reliable indicia that led to a strong inference that false claims related to the waiver of

26   co-payments were actually submitted.  *Id.* at *3.  Second, the court dismissed the relator's

27   claim—that one of the pharmacies submitted false claims by billing Medicare for prescriptions

28   that were never retrieved—because the complaint failed to allege the who (patient names) and

6

the when (dates that prescriptions were billed to Medicare). *Id.* at *3-4. Third, the court dismissed claims that one of the pharmacies submitted false claims—by changing dates so that Medicare would not reject claims—because the exhibit to the complaint that was used to support that allegation did "not reference Medicaid or suggest that the medications referenced in the email were billed to Medicaid." *Id.* at *4. Similarly, Relator O'Neill, in pressing claims against PST, attempts to extrapolate from a purported routine practice, does not allege the who and when of any claims that PST purportedly "defaulted" to CRNA Independent Practice billing, and does not make any specific factual allegations that any such claims were submitted for payment by the government.

While Relator alleges other potentially improper charting practices by Somnia doctors and CRNAs, she does not plead any facts showing PST's involvement in those practices or connect those allegations to patient bills submitted for government payment. *See infra* pages 12-13. Relator attempts to connect those charting practices to the bills by alleging that those generating bills "were not permitted to alter" the information contained in a patient's electronic medical records (EMR) and charts, so that "when a patient's EMR and/or medical chart indicated that the anesthesia services were performed with an MDA as Medical Direction, the anesthesia services were then billed to the Government as Medical Direction." FAC ¶ 55; *see also id. at* ¶ 54 ("Bills to the Government for anesthesia services are derived from the patient EMR and/or medical charts."); Mem. in Support of Relator's Opp. to Somnia Mot. to Dismiss FAC ("Opp. to Somnia") at 9:11-12 ("Defendants' bills to the government flow directly from the EMR system"). Those statements, however, cannot be squared with what Relator claims to be the core allegation against PST—that PST converted allegedly inappropriate Somnia charting for Medical Direction to Independent CRNA Practice billing. *See* Opp. at 1:12-15; FAC ¶ 103. This allegation undercuts the foundation for Relator's speculation that there is a direct link between the charts and the bills. Without this link, Relator, whose knowledge is limited to the charts at the medical center, has no basis to assert what any bills processed by PST did or did not contain.

/ / /

/ / /

**PST SERVICES, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**2.** **The "Controlling" Authority Cited by Relator Does Not Control.**

Relying entirely on precedent from outside of the Ninth Circuit, Relator attempts to excuse her lack of particularized pleading by arguing that "Controlling Precedent Does Not Require Every Relator To Be Intimately Familiar With The Particulars Of Defendant's Fraudulent Billing Scheme."  Opp. at 7:20-23.

Relator relies primarily on a Second Circuit case, *United States ex rel. Chorches for Bankruptcy Estate of Fabula v. American Medical Response, Inc.*, 865 F.3d 71 (2d Cir. 2017) to argue that "a relator does not need personal knowledge of false billing where he otherwise provides facts that support a solid inference that false claims were submitted, especially where the defendant is likely to have this information."  Opp. at 8:16-18.  To begin, Relator has provided almost no facts regarding *PST's* conduct or submission of claims.  Moreover, "*facts*" that support a "*solid inference*" is not the same as "*particular details*" paired with "reliable indicia that lead to a *strong* inference."  *Compare id., with Ebeid*, 616 F.3d at 998-99 (emphasis added).

More importantly, if Relator is trying to excuse her lack of particularized pleading because she is an "outsider" with respect to PST and arguing that the Rule 9(b) standard is relaxed where the relator does not have ready access to billing information, that argument was rejected by the Ninth Circuit in *Ebeid*.  There, the Ninth Circuit considered the argument that "traditional pleading standards for fraud under Rule 9(b) should be relaxed" "because the alleged fraud was of an extended duration and 'the billing information is solely in [defendant's] possession.'"  *Ebeid*, 616 F.3d at 999.  The Ninth Circuit rejected that argument stating, "[t]o jettison the particularity requirement simply because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule, especially because the FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government."  *Id.*

The Ninth Circuit re-affirmed that principle in *United States ex rel. Swoben v. United Healthcare Insurance Co.*, 848 F.3d 1161 (9th Cir. 2016).  There, after quoting *Ebeid*'s requirement of "particular details" of the alleged scheme "paired with reliable indicia that lead to a strong inference that claims were actually submitted", the court observed, "[A]lthough many

8

1  courts require less particularity 'when some matters are beyond the knowledge of the pleader and

2  can only be developed through discovery,' . . . we declined to apply that principle to claims

3  under the False Claims Act in *Ebeid*, 616 F.3d at 999."  *Swoben*, 848 F.3d at 1180 & n.10.  The

4  facts that Ms. O'Neill never worked at PST, has no personal knowledge of PST's procedures or

5  how PST personnel reviewed information in medical records, generated bills, what invoices were

6  sent to the government, or how any services were actually billed in invoices that were sent to the

7  government does not mean that this Court should relax the demanding standards of Rule 9(b); it

8  means that she cannot plead a viable claim.[4]

9          Plaintiff also quotes from the Fifth Circuit's opinion in *Grubbs*, a case where the court

10  stated, "[c]onfronting False Claims Act defendants with both an alleged scheme to submit false

11  claims and details leading to a strong inference that those claims were submitted—such as dates

12  and descriptions of recorded, but unprovided, services and a description of the billing system that

13  the records were likely entered into—gives defendants adequate notice of the claims."  *Grubbs*,

14  565 F.3d at 190-91.  But Relator has done neither with respect to PST.  Although the Complaint

15  refers to a specific e-mail in which a PST employee followed up on an issue regarding medical-

16  direction coding (FAC ¶ 102), the Complaint does not link that e-mail to any specific claims or

17  dates of service, and it does not assert that any resulting bill was submitted to the government.

18  Moreover, the Complaint's only description of "the billing system that the records were likely

19  entered into," (*Grubbs*, 565 F.3d at 190-91), asserts that bills were generated directly from the

20  charts (FAC ¶¶ 54-55), and is flatly contradicted by Relator's claims that PST "converted"

21

22  [4] *Chorches* is also distinguishable on other grounds.  In *Chorches*, the relator alleged that the
defendant was billing Medicare for ambulance services that were not medically necessary by
23  altering patient care reports so that the services would qualify for reimbursement.  *Chorches*, 865
F.3d at 75-76.  The complaint identified "more than ten specific runs" for which patient care
24  reports were altered and provided details such as the date and patient name.  *Id.* at 77, 84-85.

25  The allegations against PST, by contrast, do not identify any specific patient names or other
similar details in support of the claims that PST improperly "converted" billings to CRNA
26  Independent.  Moreover, specificity as to the procedures and the bills is more significant in this
case than it was in *Chorches*.  In contrast to *Chorches*, where the claim was that no bill should
27  have been submitted at all (because the services did not qualify for Medicare reimbursement),
Relator O'Neill alleges that bills for payable procedures were submitted with improper codes.
28  Thus, details regarding the nature of the procedures and how those procedures were presented on
the bills are critical.

**PST SERVICES, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  certain billing from "Medical Direction" to "CRNA Independent." *See* Opp. at 1:12-15; FAC ¶¶

2  102-03.

3        The other two cases cited by Relator—which also arise outside of the Ninth Circuit—are

4  also distinguishable.  In *United States ex rel. Walker v. R&F Properties of Lake County, Inc.*,

5  433 F.3d 1349 (11th Cir. 2005), the relator, a nurse practitioner at the clinic against whom she

6  brought the *qui tam* action, alleged that the services should have been billed under the nurse-

7  practitioners' provider identification numbers, not under the physicians' numbers.  The relator-

8  nurse in that case knew that she did not have such a number, and she had a personal conversation

9  with an office administrator who told her how the services were actually billed.  *See id.* at 1360.

10  Given that the relator in *R&F Properties* did not have an identification number, she knew any

11  bill submitted must have been falsified.  Moreover, the nature of the conversation between the

12  relator and the administrator in that case stands in sharp contrast to the pretext call made by

13  Ms. O'Neill, which was completely untethered to any actual PST billing practices concerning

14  Somnia or Kaweah.

15        Relator also cites a Seventh Circuit case, *United States ex rel. Lusby v. Rolls-Royce*

16  *Corp.*, for the proposition that it is not "essential for a relator to produce the invoices (and

17  accompanying representations) at the outset of the suit."  Opp. at 10:3-6 (quoting *Lusby*, 570

18  F.3d 849, 854 (7th Cir. 2009).  PST is not arguing that Relator was required to produce the

19  invoices with the Complaint.  And *Lusby* makes clear that a False Claims Act plaintiff must

20  allege fraud with particularity, "which 'means the who, what, when, where, and how'" (*id.* at 853

21  (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)) and that the relator in that

22  case had done so by "nam[ing] specific parts shipped on specific dates" and "details of

23  payment."  *Id.* at 854.  Again, Relator O'Neill has not met that standard.

24      **C.**    **Relator Fails to Allege That PST Acted with Scienter**.

25        To state a viable cause of action, Relator must do more than allege particular details of a

26  scheme to submit false claims paired with reliable indicia that lead to a strong inference that

27  claims were actually submitted, she must also allege that PST acted knowingly.  31 U.S.C. §

28  3729(a).  "The [False Claims] Act's scienter requirement defines 'knowing' and 'knowingly' to

10

1   mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the

2   truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the

3   information.'"   *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989,

4   1996 (2016) (quoting 31 U.S.C. § 3729(b)(1)(A)).   The scienter requirement is "rigorous."   *Id.* at

5   2002.

6          Relator asserts that her threadbare, conclusory allegations that defendants acted

7   "knowingly" adequately plead scienter because Rule 9(b) does not require particularity with

8   respect to the defendant's mental state.   Opp. at 12:1-10.   Even so, Relator's allegations are

9   insufficient.   To begin, "the tenet that a court must accept as true all of the allegations contained

10  in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause

11  of action, supported by mere conclusory statements, do not suffice."   *Ashcroft v. Iqbal*, 556 U.S.

12  662, 678 (2009).   A plaintiff must plead "enough facts to state a claim for relief that is plausible

13  on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   In other words, it is not

14  enough for Relator to allege that PST acted "knowingly," she must allege facts that make it

15  plausible, not just possible, that PST knew the claims were false or was reckless or deliberately

16  indifferent to the truth.   The Ninth Circuit has "made clear that a palpably false statement, known

17  to be a lie when it is made, is required for a party to be found liable under the False Claims Act."

18  *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006).   Relator

19  pleads no facts that make plausible a claim that PST acted "knowingly."

20         Indeed, the facts actually pleaded show the opposite.   The Complaint alleges that when a

21  PST employee noticed that the number of cases assigned to a particular anesthesiologist was not

22  compatible with the way the charts were coded, the employee did not "recklessly disregard" that

23  fact but instead refused to post any charges until the issue was resolved.   FAC ¶¶ 102-03.

24  Relator apparently disagrees with the conclusion reached in that instance and asserts that the

25  practice "violated applicable CMS regulations and District bylaws to default to Medical

26  Supervision when MDAs go over the 4:1 ratio."   FAC ¶ 103.   But "[v]iolations of laws, rules or

27  regulations alone do not create a cause of action" under the False Claims Act; "some request for

28  payment containing falsities made with scienter" must exist.   *United States ex rel. Hopper v.*

11

1    *Anton*, 91 F.3d 1261, 1265-66 (9th Cir. 1996).

2          Moreover, even if Relator were correct that it is improper to bill non-medically directed

3    CRNA (which Relator labels "CRNA Independent") in cases where the requirements for medical

4    direction are not met, it does not necessarily follow that Relator has pleaded that PST knowingly

5    submitted a false claim.   "Where . . . guidance allow[s] for more than one reasonable

6    interpretation, it would defy history and current thinking to treat a defendant who merely adopts

7    one such interpretation as a knowing or reckless violator."  *Safeco Ins. Co. of Am. v. Burr*, 551

8    U.S. 47, 70 n.20 (2007).  As Somnia explained at pages 12-15 of its opening brief, there is no

9    clear prohibition against billing services as "non-medically directed CRNA" when the

10   requirements for "medical direction" are not met.  *See* Somnia Mot. Dismiss at 12-15.  In fact,

11   the Center for Medicare and Medicaid Services ("CMS"), the agency that administers the

12   Medicare program, has explained that it does "not have a national policy that instructs carriers on

13   the method of payment for a service when the anesthesiologist does not fulfill all the medical

14   direction requirements."  65 Fed. Reg. 65413 (Nov. 1, 2000).  Noridian Healthcare Solutions,

15   CMS's Medicare Administrative Contractor in California, permits this billing.  *See* Somnia Mot.

16   to Dismiss at 14-15; Somnia's Req. Jud. Not., Ex. D.  *See also Corinthian Colleges*, 655 F.3d at

17   996 ("Under the False Claim Act's scienter requirement, 'innocent mistakes, mere negligent

18   misrepresentations and differences in interpretations' will not suffice to create liability."); *United*

19   *States ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) ("To

20   take advantage of a disputed legal question . . . is to be neither deliberately ignorant nor

21   recklessly disregardful.")

22          Finally, Relator's Opposition asserts that PST's arguments ignore "several key

23   allegations" in order to claim that PST had no knowledge of any unlawful conduct.  Opp. at

24   6:22-7:19.  Specifically, Relator points to paragraphs 89-111 in the FAC.  But, aside from

25   paragraphs 102 and 103, which are discussed in detail above, that section of the Complaint

26   contains no factual allegations that show PST knew of, had any way of knowing, or was

27   deliberately indifferent to the charting and electronic medical record issues taking place at the

28   medical center.  For example, paragraphs 89-101 describe changes to the electronic medical

12

1   record (EMR) system at Kaweah, but there is not a single non-conclusory factual allegation in

2   any of those paragraphs regarding what PST knew about the details of the EMR practices at

3   Kaweah.  Paragraph 89 starts of by alleging that shortly after PST became involved, "there was

4   *an attempt by Somnia* to change the way the EMR system functioned."  FAC ¶ 89 (emphasis

5   added).  There are several emails and letters described in the paragraphs that follow, but not a

6   single allegation that anyone at PST received or wrote any of them.  Relator also makes

7   allegations regarding the functionality of certain "pop-up" reminders, but Relator does not allege

8   that PST had any knowledge of these "pop-ups." *See* FAC ¶¶ 97-100.  Paragraphs 104-105

9   describe communications between Dr. Dorin and Somnia, with no allegation that anyone at PST

10  ever received these communications.  The other paragraphs describe issues with respect to

11  charting by Somnia doctors, but do nothing to tie those to PST or knowledge by PST of the

12  conduct of the doctors.  *See, e.g.*, FAC ¶¶ 106-111.[5]

13                                    **CONCLUSION**

14          PST respectfully requests that the Court dismiss Relator's claims with prejudice.

15  Relator's speculation does not and cannot state a claim under the California or federal false

16  claims acts.  Leave to amend need not be granted when, as is the case here, a plaintiff has already

17  been granted leave to amend and has failed to cure the deficiencies in the Complaint.  *See*

18  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008).

19

20  Dated:  October 18, 2017                        KING & SPALDING LLP

21

22

23                                          By:  /s/  W. Scott Cameron
                                                 W. Scott Cameron

24                                               Attorneys for Defendant
                                                 PST Services, LLC
25

26

27  _____
    [5] PST's Opening Brief contained a statement that in order to state a claim under the False Claims
28  Act, the false statement must actually cause the government to pay money.  PST's Mot. to
    Dismiss at 14:18-22.  That statement was incorrect, and PST withdraws it.

                                            13