W. SCOTT CAMERON (State Bar No. 229828)
**KING & SPALDING LLP**
621 Capitol Mall, Suite 1500
Sacramento, CA 95814
Telephone: (916) 321-4807
Facsimile: (916) 321-4900
Email: scameron@kslaw.com

TIMOTHY G. BARBER (Pro Hac Vice)
BRADLEY J. LINGO (Pro Hac Vice)
**KING & SPALDING LLP**
300 South Tryon Street, Suite 1700
Charlotte, NC  28202
Telephone: (704) 503-2600
Facsimile: (704) 503-2622
Email: tbarber@kslaw.com
        blingo@kslaw.com

Attorneys for Defendant
PST SERVICES, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES and the STATE OF CALIFORNIA *ex rel*. NICOLLE O'NEILL et al., <br><br> Plaintiffs/Relator, <br><br> v. <br><br> SOMNIA, INC. et al., <br><br> Defendants. | Case No. 1:15-cv-433-DAD-EPG <br><br> **MEMORANDUM IN SUPPORT OF PST SERVICES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Action Filed:  March 19, 2015 <br><br> Date:  May 1, 2018 <br> Time: 9:30 a.m. <br> Judge:  Hon. Dale A. Drozd |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.    BACKGROUND AND SUMMARY OF RELATOR'S ALLEGATIONS ................ 2

III.    ARGUMENT .......................................................................................................... 4

    A.    Relator Fails to Allege a False Certification Claim. ....................................... 4

        1.    Relator does not properly allege an "express" false certification. ....................................................................................... 7

        2.    Relator does not properly allege an "implied" false certification. ....................................................................................... 8

    B.    PST Services Is Not Liable for Alleged False Claims Submitted Before March 3, 2014. ................................................................................ 11

IV.    CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albrecht v. Lund*,
  845 F.2d 193 (9th Cir. 1988) ...........................................................................................12

*Fassberg Constr. Co. v. Hous. Auth.*,
  60 Cal. Rptr. 3d 375 (Ct. App. 2007).................................................................................11

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
  499 F.3d 1048 (9th Cir. 2007) ............................................................................................7

*Knudsen v. Sprint Commc'ns Co.*,
  No. 13-cv-4476, 2016 WL 4548924 (N.D. Cal. Sept. 1, 2016).................................................9

*Miller v. Holzman*,
  563 F. Supp. 2d 54 (D.D.C. 2008), *aff'd in part, rev'd in part on other grounds*, 608 F.3d 871 (D.C. Cir. 2010)...........................................................................12

*United States ex rel. Campie v. Gilead Scis., Inc.*,
  862 F.3d 890 (9th Cir. 2017) ..............................................................................................3

*United States ex rel. Cohen v. City of Palmer*,
  668 F. App'x 247 (9th Cir. 2016) ................................................................................... 9-10

*United States ex rel. Driscoll v. Todd Spencer M.D. Med. Grp.*,
  No. 1:11-cv-1776, 2016 WL 7229135 (E.D. Cal. Dec. 14, 2016)............................................8

*United States ex rel. Ferris v. Afognak Native Corp.*,
  No. 3:15-cv-150, 2016 WL 9088706 (D. Alaska Sept. 28, 2016) ..........................................10

*United States ex rel. Hendow v. Univ. of Phx.*,
  461 F.3d 1166 (9th Cir. 2006) ............................................................................................3

*United States ex rel. Mateski v. Raytheon Co.*,
  No. 2:06-cv-3614, 2017 WL 3326452 (C.D. Cal. Aug. 3, 2017) ..................................... 10-11

*United States ex rel. Moore v. Cmty. Health Servs., Inc.*,
  No. 3:09-cv-1127, 2012 WL 1069474 (D. Conn. Mar. 29, 2012) ........................................ 5-6

*United States ex rel. Nikakhtar v. Mission City Cmty. Network, Inc.*,
  No. 12-cv-3692, 2016 WL 5886914 (C.D. Cal. Jan. 4, 2016)..................................................5

*United States ex rel. Wilkins v. United Health Grp., Inc.*,
  659 F.3d 295 (3d Cir. 2011)................................................................................................3

*United States v. Krizek*,
  111 F.3d 934 (D.C. Cir. 1997) ..........................................................................................11

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..................................................................................................7

*United States v. Scan Health Plan*,
    No. 09-cv-5013, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) ................................................10

*United States v. Woodbury*,
    359 F.2d 370 (9th Cir. 1966) ................................................................................................11

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016)................................................................................................3, 9, 10, 11

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................................................12

**Statutes**

Cal. Gov't Code § 12651 ..............................................................................................................2

31 U.S.C. § 3729..........................................................................................................................2

**Regulations**

42 C.F.R. § 414.46......................................................................................................................9

42 C.F.R. § 414.60..............................................................................................................7, 10, 11

42 C.F.R. § 415.110.................................................................................................................6, 9

66 Fed. Reg. 56,762, 56,769 (Nov. 13, 2001)..............................................................................7

60 Fed. Reg. 63,124, 63,178 (Dec. 8, 1995) ................................................................................7

**Secondary Source**

John T. Boese, *Civil False Claims and Qui Tam Actions* (4th ed. Supp. 2017-2).........................10

## I. INTRODUCTION

This is a False Claims Act ("FCA") *qui tam* action in which Relator Nicolle O'Neill ("Relator") alleges that Somnia, Inc. and certain of its affiliates (collectively, "Somnia") and PST Services, LLC ("PST Services") submitted false medical reimbursement claims to government healthcare payers.[1]  In deciding motions to dismiss Relator's First Amended Complaint ("FAC" [Doc. No. 41]), the Court allowed Relator's claims of "factually false" bills for anesthesia services to proceed.  The Court dismissed Relator's second theory that Defendants submitted false bills by "impliedly certifying" compliance with legal requirements in connection with bills for anesthesia services performed by certified registered nurse anesthetists and coded with the "QZ" modifier, holding that Relator failed to "allege[] any facts in her FAC suggesting the alleged misuse of the QZ code was material."  (Feb. Order at 16 [Doc. No. 70].)  Relator now has filed a Second Amended Complaint ("SAC" [Doc. No. 74]) in which she attempts to cure that shortcoming by alleging both "express" and "implied" certification claims.

Both fail.  Her "express" false certification claim fails because it is premised on an "express" representation that was never made.  Her "implied" false certification claim fails because vague allegations concerning "TEFRA regulations" do not satisfy the requirement to plead materiality where Relator has not even specified what QZ-related TEFRA regulations she is referring to, much less pleaded facts that show why violations of those regulations would have been material to the government's decision to pay claims.

In this motion, PST Services seeks limited relief: (1) dismissal of the insufficiently pleaded false certification claims related to the use of the QZ modifier; and (2) dismissal of claims against PST Services (to the extent they are asserted) based on alleged false claims submitted to the government before March 3, 2014, which is the date Relator pleads that PST Services began involvement in this matter.

---

[1] Effective December 31, 2017, the name of PST Services was changed to Change Healthcare Technology Enabled Services, LLC.  Pursuant to Rule 25(c) of the Federal Rules of Civil Procedure, PST Services continues to defend this action under its former name.  References here to PST Services should be construed to mean PST Services and its successor.

1
MEMORANDUM IN SUPPORT OF PST SERVICES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

## II.     BACKGROUND AND SUMMARY OF RELATOR'S ALLEGATIONS

Relator asserts three causes of action against PST Services: violations of two provisions of the federal False Claims Act, 31 U.S.C. § 3729(a)(1) and (a)(2), and violations of the California False Claims Act, Cal. Gov't Code § 12651 *et seq.*  These claims are each based on the same factual allegations: from December 2011 to October 2015, Somnia, and starting in March 2014 its billing provider PST Services, submitted or caused to be submitted "false claims" to federally- and state-funded healthcare programs for anesthesia-related services performed in the Kaweah Delta Healthcare District (the "District").[2]  Anesthesiology bills are coded with "modifiers" to indicate how the Medicare-allowable fee should be calculated and allocated between medical doctors and certified registered nurse anesthetists ("CRNAs").  Relator's primary "false claims" allegation—what she calls the "[t]he gravamen of this case"—is that Defendants billed various anesthesia services to the government using the "medical direction" modifier when those services should have been billed using the "medical supervision" modifier. (SAC ¶ 39)  Relator also alleges a separate set of false claims related to bills using the "QZ" modifier—indicating anesthesia services performed by a CRNA without medical direction by a physician.  (*See, e.g.*, *id.* ¶¶ 36, 46-50.)

PST Services and Somnia moved to dismiss Relator's First Amended Complaint on several grounds, including that the First Amended Complaint failed to plead any False Claims Act claims with the particularity required under Rule 9(b).  On February 2, 2018, the Court entered an order [Doc. No. 70] (the "February Order") denying in part and granting in part the motions to dismiss.  In doing so, the Court took judicial notice of certain documents that either were referenced in the First Amended Complaint or were public records not "subject to any reasonable dispute," including Chapter 12 of the Medicare Claims Processing Manual ("Manual") published by the Centers for Medicare and Medicaid Services ("CMS") and Frequently Asked Questions guidance issued by Medicare Administrative Contractor Noridian Healthcare Solutions (the "Noridian FAQs").  (Feb. Order at 6-7; *see also* Manual [Doc. No. 49-

---

[2] Relator alleges additional employment and retaliation-related claims solely against Somnia.

3]; Noridian FAQs [Doc. No. 49-4].)  The Court found that Relator's "medical direction" claims were adequately pleaded as "factually false" claims—that is, claims for payment that are "literally false or fraudulent."  (Feb. Order. at 8-9 & n.6 (quoting *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011); *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1170 (9th Cir. 2006)).)  The Court also noted that, although "[m]ost of the allegations of the FAC relate to events occurring during 2012 and 2013," PST Services "is not identified in any of those factual allegations until March 3, 2014."  (*Id.* at 4-5.)

The Court dismissed Relator's QZ-based claims, which were premised on the allegation that QZ-qualifying practice by CRNAs was prohibited by District bylaws that allegedly forbade CRNAs to work without supervision by an anesthesiologist.  (*Id.* at 4, 15-16.)  The Court thus construed Relator's QZ allegations as asserting false claims under the "implied false certification" theory of False Claims Act liability—specifically, that in submitting bills with the QZ modifier Defendants falsely certified compliance with the District bylaws. (*Id.* at 4, 9 & n.6.)  Under that theory, the Court explained, a claim that is not false on its face may still give rise to liability if it "impliedly certifies compliance" with a condition of payment, including by failing to disclose "the defendant's violation of a material statutory, regulatory, or contractual requirement."  (*Id.* at 9 (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016); *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 901 (9th Cir. 2017)).)  The Court held that Relator failed to plead that Defendants' alleged non-compliance with District bylaws (supposedly prohibiting unsupervised CRNA practice) was "material" under this standard and thus dismissed the QZ-based claims—but with leave to re-plead to "cure" the deficiency.  (*Id.* at 9, 24.)

On February 28, 2018, Relator filed her Second Amended Complaint.  That Complaint is a verbatim copy of the First Amended Complaint (including the allegation that PST Services' involvement began only in March 2014) except that it includes seven new paragraphs under the heading "Materiality of Defendants' False Claims for Anesthesia Services."  (*See* SAC ¶¶ 64-

1  70.)[3]  She does not, however, allege any additional facts to support her original theory that
2  Defendants falsely certified compliance with the District bylaws.  Instead, Relator advances two
3  new theories of false certification—that, in submitting bills to the government with the QZ
4  modifier, PST Services: (i) "made an express representation to the government that a CRNA,
5  alone and without any supervision by an anesthesiologist, performed the services in question"
6  (SAC ¶ 66), and (ii) made "false implied certifications that [it] had complied with the TEFRA
7  regulations applicable to [its] billing decision." (SAC ¶ 69.)

8  Relator's new false-certification allegations are insufficient for the same reasons her
9  original allegations were insufficient: They do not satisfy *Escobar*'s materiality standard, and
10  they are not pleaded with particularity as required under Rule 9(b).  The Court, therefore, should
11  again dismiss Relator's QZ-based claims.  Moreover, because the Second Amended Complaint
12  specifically alleges that PST Services had no involvement in the billing conduct at issue before
13  March 3, 2014, the Court should dismiss the claims against PST Services (to the extent Relator is
14  attempting to assert them) based on the submission of false claims before that date.

15  **III.    ARGUMENT**

16  The Court should dismiss two subsets of Relator's allegations.  First, the Court should
17  again dismiss Relator's QZ false-certification claims because those claims still are not
18  adequately pleaded.  Second, the Court should dismiss any claims asserted against PST Services
19  that are based on false claims submitted earlier than PST Services' March 3, 2014 involvement
20  with Somnia's billing.

21  **A.    Relator Fails to Allege a False Certification Claim.**

22  In addition to her main claim—that Defendants submitted factually-false "medical
23  direction" claims—Relator again attempts to allege an additional "false certification" scheme
24  based on the submission of bills using the "QZ" modifier.  Although not clear on the face of the
25  First Amended Complaint, Relator explained at the hearing on Defendants' motions to dismiss
26  that these alleged false claims were material because they violated the District bylaws allegedly

27
28  [3] The SAC also eliminates the Ninth and Tenth causes of action (asserting intentional and negligent infliction of emotional distress) that had been asserted against Somnia in the First Amended Complaint.

4

prohibiting unsupervised CRNA practice.  The Court rejected that theory as insufficiently pleaded.  In the Second Amended Complaint, Relator does not allege any additional facts pertaining to the bylaws, let alone their materiality, thereby essentially abandoning that theory.[4]

Instead, Relator asserts two new theories in the Second Amended Complaint to support the QZ-related claims.  First, Relator purports to allege an express false certification claim, albeit not based on certification of compliance with any particular law or legal obligation: "[W]hen Defendants[] used the billing code QZ, Defendants made an express representation to the government that a CRNA, alone and without any supervision by an anesthesiologist, performed the services in question."  (SAC ¶ 66.)  Second, Relator purports to allege an implied false certification claim premised on compliance with "the TEFRA regulations applicable to [Defendants'] billing decision."  (*Id.* ¶ 69.)

As explained below, neither of these new theories sufficiently pleads false-certification liability.[5]  As a threshold matter, both theories fail because they are wrong on the law and based on an incorrect portrayal of what the use of the QZ modifier indicates.  Relator defines QZ as

---

[4] The SAC nevertheless contains references to those bylaws—the exact same references contained in the FAC.  (*See* SAC ¶¶ 47-49.)  To the extent Relator continues to assert a claim based on them, that claim should be dismissed for the same reasons the Court already dismissed it:  The SAC fails to allege facts showing that compliance with the District bylaws was material.  (*See* Feb. Order at 16.)

[5] The QZ claims also fail for the independent reason that they are not pleaded with particularity under Rule 9(b).  The Court found, in the February Order, that Relator's "medical direction" claims were sufficient because Relator's allegations were specific as to the charting of numerous actual anesthesia services—including "the names of the individuals and the precise dates on which the services in question were performed."  (Feb. Order at 13; *see also* SAC ¶¶ 74-77.)  By contrast, Relator's QZ-based claims are not supported by allegations of any particular service but are instead based on an email in which a PST Services employee wrote that "we are able to process the below mentioned cases as non-medically directed CRNA."  (SAC ¶ 110.)  The "below mentioned cases," however, are not described by Relator in any way (unlike the "medical direction" cases she details at length) and so the allegations do not show that any one of them did not qualify for the QZ modifier.  This failure is particularly egregious here because, throughout the SAC, Relator specifically alleges that CRNAs in the District worked "with little or no oversight by medical doctors."  (SAC ¶ 1.)  If that is true for any of the email's "below mentioned cases," then QZ was proper even under Relator's characterization of the modifier.  Moreover, to the extent that the email is read to indicate that some of the cases should have been billed as "medical direction," QZ claims for those cases could not be a basis for FCA liability because, as Relator notes (SAC ¶¶ 44, 62), the reimbursement rate for "medical direction" and QZ is the same.  *See, e.g.*, *United States ex rel. Nikakhtar v. Mission City Cmty. Network, Inc.*, No. 12-cv-3692, 2016 WL 5886914, at *4-5 (C.D. Cal. Jan. 4, 2016) (holding that false billing codes did not give rise to FCA liability where reimbursement amounts were not based on those codes); *United States ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 3:09-cv-1127, 2012 WL 1069474, at *5 (D. Conn. Mar. 29, 2012) (dismissing claim for alleged misuse of billing code where reimbursement amount was the same).

"CRNA Independent" and asserts that it "indicates there was no [physician] directing *or supervising*" the CRNA.  (*Id.* ¶¶ 35-36, 134 (emphasis added); *see also id.* ¶ 66 (alleging that by using QZ "Defendants made an express representation to the government that a CRNA, alone and without any supervision by an anesthesiologist, performed the services in question").  This characterization is not supported, and is in fact contradicted, by the relevant authorities.  CMS's definition of QZ—contained in the Manual that Relator cites (*id.* ¶ 50) and of which the Court already has taken judicial notice (Feb. Order at 6-7)—is not "CRNA Independent"—a label Relator assigned.  Rather, as defined by CMS, "QZ" means "CRNA service: Without *medical direction* by a physician."[6]  (CMS Manual § 140.3.3 (emphasis added).)

Additionally, Noridian, the Medicare Administrative Contractor responsible for administering Medicare Part B in California, specifically has advised healthcare providers and billers on use of the QZ modifier.  In its FAQs, of which the Court already has taken judicial notice (Feb. Order at 6-7), it explained the circumstances in which QZ would *not* be appropriate for CRNA-provided services:

> Q1.   Are there any instances where a Certified Registered Nurse Anesthetist (CRNA) would not append the QZ modifier?

---

[6] As Relator makes clear in asserting her medical direction claims (SAC ¶¶ 37-38), medical "direction" is itself a term of art that applies only when a physician satisfies numerous, specific requirements:

(1) For each patient, the physician—

   (i) Performs a pre-anesthetic examination and evaluation;

   (ii) Prescribes the anesthesia plan;

   (iii) Personally participates in the most demanding aspects of the anesthesia plan including, if applicable, induction and emergence;

   (iv) Ensures that any procedures in the anesthesia plan that he or she does not perform are performed by a qualified individual as defined in operating instructions;

   (v) Monitors the course of anesthesia administration at frequent intervals;

   (vi) Remains physically present and available for immediate diagnosis and treatment of emergencies; and

   (vii) Provides indicated post-anesthesia care.

(2) The physician directs no more than four anesthesia services concurrently and does not perform any other services while he or she is directing the single or concurrent services so that one or more of the conditions in paragraph (a)(1) of this section are not violated.

42 C.F.R. § 415.110(a).

6
MEMORANDUM IN SUPPORT OF PST SERVICES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

A1. A CRNA would not append the QZ modifier if they are:
- A Qualified nonphysician anesthetist with *medical direction* by a physician or;
- For monitored anesthesiology care services or;
- *Medical direction* of one qualified nonphysician anesthetist by an anesthesiologist

(Noridian FAQs Q.1 (emphases added).)[7] Noridian thus makes clear that CRNA service should not be billed with the QZ modifier only when the service was subject to "medical direction" (or was "monitored," a status not at issue in this case)—and does not prohibit the use of the QZ modifier even when the CRNA has acted with supervision by a doctor. (*See id.*) Moreover, the CMS regulation pertaining to billing for CRNA service similarly distinguishes only between whether the service was "medically directed or not medically directed" and, for the latter, specifically allows full reimbursement for the service (which is what the QZ modifier seeks). *See* 42 C.F.R. § 414.60(a).[8]

### 1. Relator does not properly allege an "express" false certification.

Relator does not allege any facts to show that PST Services made an "*express representation*" that "a CRNA, *alone and without any supervision* by an anesthesiologist, performed the services in question" (SAC ¶ 66 (emphases added)). *See, e.g.*, *United States ex rel. Driscoll v. Todd Spencer M.D. Med. Grp.*, No. 1:11-cv-1776, 2016 WL 7229135, at *4 (E.D. Cal. Dec. 14, 2016) ("Express certification occurs when 'the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for

---

[7] To the extent the Court finds that it cannot consider the Manual [Doc. No. 49-3] or Noridian FAQs [Doc. No. 49-4] without expressly taking judicial notice of them in connection with this motion, PST Services asks the Court to do so for the same reasons it did so in the February Order: The Manual was "incorporated by reference into" the SAC (SAC ¶¶ 33, 41, 44-45), and the Noridian FAQs document "is a matter of public record, and the facts do not appear subject to any reasonable dispute." (*See* Feb. Order at 7 (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)).)

[8] Notably, this regulation was promulgated six years before CMS allowed states to opt out of CRNA operational supervision requirements. *See* 60 Fed. Reg. 63,124, 63,178 (Dec. 8, 1995) (adopting 42 C.F.R. § 414.60(a)(2)); 66 Fed. Reg. 56,762, 56,769 (Nov. 13, 2001) (adopting opt-out provisions codified at 42 C.F.R. § 482.52). During that period, therefore, CRNAs throughout the country could seek full reimbursement for services "not directed by a physician" even though none could be unsupervised from an operational standpoint. Thus, one can have supervision from an operational perspective and still appropriately seek full reimbursement for non-medically directed CRNA service.

1  payment is submitted.'" (quoting *United States ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th
2  Cir. 2010))).  Indeed, Relator's only relevant allegation is that Defendants "used the billing code
3  QZ."  (SAC ¶ 66.)  Relator makes no attempt to explain how such "use" of a billing code is the
4  equivalent of an *express certification* with any law or regulation.  *See Driscoll*, 2016 WL
5  7229135, at *5 (dismissing express false certification claim because "Relator fails to allege
6  sufficient facts showing that Defendants expressly certified their compliance with laws").  But
7  even if the mere "use" of the QZ modifier could constitute a certification, it cannot constitute the
8  "express" certification Relator alleges—that the CRNA acted "alone and without any
9  supervision"—because, as shown above, QZ is not defined that way by any statute, regulation, or
10 relevant guidance, and Relator pleads no facts to support the notion that Defendants somehow
11 "expressly" certified that the CRNA acted alone and without any form of operational supervision
12 when providing the services in question.  (*See* CMS Manual § 140.3.3.)  At most, using QZ can
13 certify only what CMS says the modifier means: "CRNA service: Without medical direction by a
14 physician"—that is, CRNA service for which a physician did not meet the requirements for the
15 use of the "medical direction" modifier.[9]  (*See id.*)  Accordingly, the Second Amended
16 Complaint fails to allege an "express" false certification claim with respect to the use of the QZ
17 modifier.

18          **2.      Relator does not properly allege an "implied" false certification.**
19          To plead liability under the implied false certification theory, a relator must allege,
20 among other things, that the defendant failed to disclose "noncompliance with material statutory,
21 regulatory, or contractual requirements."  *Universal Health Servs., Inc. v. United States ex rel.*
22 *Escobar*, 136 S. Ct. 1989, 2001 (2016).  "The materiality standard is demanding," *id.* at 2003,
23 and Relator's attempt to meet it in the Second Amended Complaint, by referencing
24

---

[9] CRNAs' provision of services "without medical direction by a physician" is, in fact, what Relator complains was the prevalent practice in the District and what forms the basis of her primary "medical direction" FCA claims.  (*See, e.g.*, SAC ¶ 1 ("Defendants knowingly and systematically submitted false claims for payment to [CMS] stating that medical doctors were medically directing anesthesia services when, in reality, such services were actually being performed by [CRNAs], with little or no oversight by medical doctors . . . .").)  Indeed, she goes so far as to allege that, "[o]ften, CRNAs performed the procedure without knowing which [doctor] was in-house."  (*Id.* ¶ 73.)

noncompliance with unspecified "TEFRA regulations" is even weaker than Relator's former District-bylaws theory. Relator does not allege any specific TEFRA regulation related to the use of the QZ modifier PST Services violated, explain why or how that unspecified requirement was violated, or plead any facts showing materiality of such a requirement. She thus fails to plausibly allege, let alone plead with particularity, a QZ-based implied false certification claim. *See id.* at 2004 n.6 ("The standard for materiality that we have outlined is a familiar and rigorous one. And False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality."); *see also, e.g.*, *Knudsen v. Sprint Commc'ns Co.*, No. 13-cv-4476, 2016 WL 4548924, at *13 (N.D. Cal. Sept. 1, 2016) (dismissing FCA claim where plaintiff failed "to adequately allege materiality plausibly and with particularity").

*First*, Relator fails to show PST Services' noncompliance with any "requirement." She alleges only that PST Services failed to comply with "the conditions of payment" set forth in "TEFRA regulations." (SAC ¶ 69.) Nowhere in the Second Amended Complaint, however, does Relator specify what "TEFRA regulations" PST Services allegedly violated with respect to the use of the QZ modifier. The only regulations cited in the Second Amended Complaint (which are cited elsewhere to support the medical direction claims) are 42 C.F.R. §§ 414.46 and 415.110. (*See id.* ¶¶ 33, 37, 40.) Those regulations, as Relator herself details (*id.*), pertain only to non-QZ billing for services using modifiers for "personally performed," "medically directed," and "medically supervised" services. *See* 42 C.F.R. § 414.46(c) (requirements for "personally performed" services); *id.* § 414.46(d) (requirements for "medical direction"); *id.* § 414.46(f) (requirements for "medical supervision"); *id.* § 415.110 (conditions for payment for "medical direction"). Relator's failure to identify a specific "statutory, regulatory, or contractual requirement" that PST Services violated is fatal to her implied false certification theory for QZ-based claims. *See, e.g.*, *United States ex rel. Cohen v. City of Palmer*, 668 F. App'x 247, 248 (9th Cir. 2016) (affirming dismissal of implied false certification claim because relator failed to identify a "statutory, regulatory, or contractual requirement" that specifically prohibited defendant's complained-of actions); *see also* John T. Boese, *Civil False Claims and Qui Tam*

*Actions* § 2.04[A] (4th ed. Supp. 2017-2) ("Courts are requiring FCA plaintiffs to identify a 'material statutory, regulatory, or contractual requirement' that was violated by the defendant as an initial pleading requirement under *Escobar* and Rule 9(b).") (collecting cases).

*Second*, even if Relator had identified a specific "TEFRA regulation" proscribing the alleged QZ-billing practices, Relator fails to plead facts that show that any such violation would be "material" to the government's decision to pay.  As the Court explained in its February Order, "'[t]he materiality standard is demanding,' and is not met 'merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement of payment.'"  (Feb. Order at 15 (quoting *Escobar*, 136 S. Ct. at 2003).)  Accordingly, Relator "must allege some facts that show that the government actually does not pay claims if they involve the . . . violations in question."  (*Id.* at 16 (quoting *United States ex rel. Ferris v. Afognak Native Corp.*, No. 3:15-cv-150, 2016 WL 9088706, at *3 (D. Alaska Sept. 28, 2016)).)  "[C]onclusory allegations that the . . . Defendants' conduct was material" are insufficient.  (*Id.* (quoting *United States v. Scan Health Plan*, No. 09-cv-5013, 2017 WL 4564722, at *6 (C.D. Cal. Oct. 5, 2017)).)  The Second Amended Complaint, however, contains only one conclusory allegation of materiality: "Defendants well knew that had they truthfully disclosed their noncompliance with the TEFRA regulations, the government would not have reimbursed them at the rates they requested, or at all."  (SAC ¶ 70.)  This bald assertion in no way shows *how* a "TEFRA regulation" violation is material or that the government "consistently refuses to pay claims . . . based on noncompliance" with the unspecified regulation (or Relator's interpretation of the QZ modifier).[10]  *See Escobar*, 136 S. Ct. at 2003; *United States ex rel. Mateski v. Raytheon Co.*, No. 2:06-cv-3614, 2017 WL 3326452, at *7 (C.D. Cal. Aug. 3, 2017).  The SAC thus fails to satisfy the "demanding" materiality standard.  *See Escobar*, 136 S. Ct. at 2003.

---

[10] In fact, the authorities on use of QZ show that the government *does* pay QZ-billed claims when the conditions for "medical direction" are not satisfied.  *See* 42 C.F.R. § 414.60(a); Noridian FAQs Q.1.  "[I]f the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."  *Escobar*, 136 S. Ct. at 2003-04.

### B. PST Services Is Not Liable for Alleged False Claims Submitted Before March 3, 2014.

Relator alleges generally that, "[f]rom about December 2011 through about October 2015, Defendants caused false claims for anesthesia services to be submitted to the Government . . . ." (SAC ¶ 58.)  In its February Order on the First Amended Complaint, the Court found that, although "[m]ost of the allegations of the FAC relate to events occurring during 2012 and 2013," PST Services "is not identified in any of those factual allegations until March 3, 2014." (Feb. Order at 4-5.)  In the Second Amended Complaint, Relator again makes clear that PST Services' alleged role in submitting false claims began only in March 2014. Specifically, Relator acknowledges that the Somnia Defendants did not engage PST Services to handle Somnia's billing until March 3, 2014.  (*Id.* ¶¶ 95-96 ("On or about March 3, 2014, [Somnia] engaged PST Services and/or its predecessors, a company providing services to the healthcare industry, to handle their billing and to 'fix' the problems that were becoming too obvious and overwhelming to manage.").)  Although Relator alleges that the purported "fraudulent billing practices" she complains of "continue[d] after PST Services was hired" (*id.* at 25 (heading)), she does not allege, or plead any facts showing, that PST Services had any role (or any involvement whatsoever) in Somnia's billing, or the submission of alleged false claims, before March 3, 2014.  As a matter of law, PST Services cannot be liable for any allegedly false claims submitted before that date.

Under the False Claims Act, each false claim submitted to the government is a separate, independent basis of liability.  *See, e.g.*, *United States v. Woodbury*, 359 F.2d 370, 378 (9th Cir. 1966) (holding that each claim for money submitted to the government constituted a separate "false claim"); *Fassberg Constr. Co. v. Hous. Auth.*, 60 Cal. Rptr. 3d 375, 392 (Ct. App. 2007) (same); *see also United States v. Krizek*, 111 F.3d 934, 940 (D.C. Cir. 1997) (holding that each reimbursement form submitted to CMS is a separate "false claim").  Accordingly, even if PST Services could be found jointly and severally liable with Somnia for the submission of Somnia's reimbursement requests, that liability cannot extend to requests submitted before PST Services' involvement with Somnia's billing.  *See, e.g.*, *Miller v. Holzman*, 563 F. Supp. 2d 54, 144 (D.D.C. 2008) (recognizing that, in a case involving multiple "false claims," defendants have

1  joint-and-several liability only for those "false claims" with which they were involved), *aff'd in*
2  *part, rev'd in part on other grounds*, 608 F.3d 871 (D.C. Cir. 2010).  To streamline this
3  litigation, and to clarify the claims at issue, the Court should dismiss any claims against PST
4  Services to the extent they are based on alleged false claims submitted before March 3, 2014.

5  **IV.     CONCLUSION**

6        For the reasons stated above, the Court should dismiss two subsets of the claims asserted
7  against PST Services: (i) false certification claims based on the QZ modifier; and (ii) claims
8  against PST Services based on alleged false claims submitted before March 3, 2014.  Because
9  Relator already has amended her pleading twice before in an attempt to overcome pleading
10 deficiencies, the dismissal of these subsets of claims should be with prejudice.  *See, e.g.*, *Zucco*
11 *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (affirming dismissal of
12 claims with prejudice "where the plaintiff has previously been granted leave to amend and has
13 subsequently failed to add the requisite particularity to its claims"); *Albrecht v. Lund*, 845 F.2d
14 193, 195 (9th Cir. 1988) ("If . . . the 'allegation of other facts consistent with the challenged
15 pleading could not possibly cure the deficiency,' the dismissal without leave to amend is proper."
16 (quoting *Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.
17 1986))).

19 Dated:  March 14, 2018                   KING & SPALDING LLP

22                                       By: /s/ W. Scott Cameron
                                            W. Scott Cameron

23                                             Attorneys for Defendant
                                            PST Services, LLC

MEMORANDUM IN SUPPORT OF PST SERVICES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT