W. SCOTT CAMERON (State Bar No. 229828)
**KING & SPALDING LLP**
621 Capitol Mall, Suite 1500
Sacramento, CA 95814
Telephone: (916) 321-4807
Facsimile: (916) 321-4900
Email: scameron@kslaw.com

TIMOTHY G. BARBER (Pro Hac Vice)
BRADLEY J. LINGO (Pro Hac Vice)
**KING & SPALDING LLP**
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Telephone: (704) 503-2600
Facsimile: (704) 503-2622
Email: tbarber@kslaw.com
　　　　blingo@kslaw.com

Attorneys for Defendant
PST SERVICES, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES and the STATE OF CALIFORNIA *ex rel.* NICOLLE O'NEILL et al., <br><br> Plaintiffs/Relator, <br><br> v. <br><br> SOMNIA, INC. et al., <br><br> Defendants. | Case No. 1:15-cv-433-DAD-EPG <br><br> **REPLY IN SUPPORT OF PST SERVICES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Action Filed: March 19, 2015 <br><br> Date: May 1, 2018 <br> Time: 9:30 a.m. <br> Judge: Hon. Dale A. Drozd |

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................................. 1

I.     PST SERVICES' MOTION IS PROPERLY BEFORE THE COURT ....................... 1

     A.     The Second Amended Complaint's QZ False-Certification Theories Are New. ........................................................................................ 1

     B.     Pre-March 2014 Claims Against PST Services May Be Dismissed Now. ............................................................................................................... 3

II.     PST SERVICES' MOTION SHOULD BE GRANTED ON THE MERITS. ................................................................................................................. 5

     A.     Relator's "Express False Certification" Theory Fails ..................................... 5

     B.     Relator's "Implied False Certification" Theory Fails. ..................................... 9

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 6

*Brooks v. Caswell*,
    No. 3:14-cv-1232, 2016 WL 866303 (D. Or. Mar. 2, 2016) ............................................. 2, 5

*City of Los Angeles v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) ............................................................................................... 2

*In re Apple iPhone Antitrust Litig.*,
    846 F.3d 313 (9th Cir. 2017) ........................................................................................... 4, 5

*Jaeger v. Howmedica Osteonics Corp.*,
    No. 15-cv-164, 2016 WL 520985 (N.D. Cal. Feb. 10, 2016) .............................................. 5

*Miller v. Holzman*,
    563 F. Supp. 2d 54 (D.D.C. 2008) ....................................................................................... 4

*Townsend Farms v. Goknur Gida*,
    No. 15-cv-837, 2016 WL 10570248 (C.D. Cal. Aug. 17, 2016) .......................................... 5

*United States ex rel. Ferris v. Afognak Native Corp.*,
    No. 3:15-cv-150, 2016 WL 9088706 (D. Alaska Sept. 28, 2016) ...................................... 11

*United States ex rel. Modglin v. DJO Glob. Inc.*,
    48 F. Supp. 3d 1362 (C.D. Cal. 2014) ................................................................................. 2

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    136 S. Ct. 1989 (2016) ................................................................................................. 10, 11

**Statutes**

42 C.F.R. § 414.60(a) ................................................................................................................. 10

42 U.S.C. § 1395u(h)(1) .............................................................................................................. 7

**Other Authorities**

Charles Alan Wright et al., *Federal Practice and Procedure* § 1388 (3d ed.) ............................ 2

Federal Rule of Civil Procedure, Rule 1 ..................................................................................... 5

Federal Rule of Civil Procedure, Rule 12 ........................................................................... 2, 4, 5

Relator attempts to portray PST Services' motion as seeking dismissal of her entire Second Amended Complaint on the same grounds asserted in PST Services' motion to dismiss the First Amended Complaint—hoping that the Court will simply deny the motion as procedurally improper.  The current motion, however, is limited and directed to new allegations of liability asserted against PST Services and to a time-limitation on claims that, on the merits, Relator does not dispute.

To be clear, PST Services seeks the dismissal of only two subsets of claims: (1) claims based on newly-pleaded "false certification" theories of FCA liability arising out of alleged misuse of the QZ modifier (*see* SAC ¶¶ 64-70 [Doc. 74]); and (2) claims, to the extent they are asserted, against PST Services that are based on the alleged submission of false claims before March 3, 2014, the date Relator continues to assert was the beginning of PST Services' involvement in the matters at issue.

Relator's newly-pleaded false certification theories should be dismissed.  The new "express certification" allegations regarding the use of the QZ modifier are based on an "express" certification that was never made.  As to the newly-pleaded "implied false certification" claim, Relator again fails to sufficiently allege materiality.  PST Services' motion is procedurally proper, and Relator has failed to show any reason why the motion should be denied.

## **ARGUMENT**

### I. PST SERVICES' MOTION IS PROPERLY BEFORE THE COURT.

#### A. The Second Amended Complaint's QZ False-Certification Theories Are New.

Relator argues that PST Services' motion to dismiss the QZ claims is an improper motion for reconsideration of the February Order and that the Court cannot consider the motion under the "law of the case" doctrine.  That is incorrect.

The QZ claims that PST Services' motion seeks to dismiss are those that are based on new theories of liability alleged in the Second Amended Complaint.  There is, therefore, nothing

///

to "reconsider" and no "law of the case" regarding these new allegations.[1]  Even the authorities that Relator cites recognize that "if the amended complaint . . . contains new matter, the defendant may bring a second motion under Rule 12 to object to the new allegations." *Brooks v. Caswell*, No. 3:14-cv-1232, 2016 WL 866303, at *2 (D. Or. Mar. 2, 2016) (quoting *Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.*, 217 F.R.D. 305, 307 (N.D.N.Y. 2003)); *see also* Charles Alan Wright et al., *Federal Practice and Procedure* § 1388 (3d ed.) ("[A] Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion.").

As the Court explained in its February Order, a claim submitted to the government can be "false" under the FCA in different ways, including by being "factually false" or by falsely certifying compliance with conditions of payment.  (*See* Feb. Order at 8-9 [Doc 70].)  As for the latter, a "false certification" can be either express or implied.  *E.g.*, *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1387 (C.D. Cal. 2014) ("There are two types of false certification claims—expressly false certification and impliedly false certification."), *aff'd mem.*, 678 F. App'x 594 (9th Cir. 2017).

In her First Amended Complaint, Relator generally alleged that the Defendants misused the QZ modifier in cases that "failed to comply with medical direction."  (FAC ¶ 62 [Doc. 41].)  But the First Amended Complaint never specified the type of falsity implicated by the alleged misuse of QZ.  The Court, in the February Order, interpreted certain of Relator's allegations relating to the use of the QZ code as relying upon the implied false certification theory—specifically, as alleging that the Defendants' use of QZ constituted an implied false certification of compliance with the District's bylaws. (Feb. Order at 9 n.6 & 15-16.)  The Court then held that the First Amended Complaint failed to sufficiently allege the materiality of such an implied false certification claim—but it granted Relator leave to re-plead the claim.  (*Id.* at 16, 24.)

---

[1] The "law of the case" doctrine is particularly inapplicable because it typically pertains to a lower court's obligation, on remand, to follow an appellate court's decisions and, in any event, never precludes a trial court from reconsidering an interlocutory decision.  *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) ("The doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order.").

1  Although the Order did not explicitly extend to PST Services its holding regarding the failure to
2  plead materiality of the QZ-based false certification claim, logic dictates that if Relator failed to
3  plead the materiality of such a claim against one defendant, she failed to plead it against all
4  defendants.   The materiality issue is not specific to any particular defendant but instead relates
5  to the question of whether the government would not have paid the claims it if had known of the
6  allegedly-erroneous certifications.  (*See* Feb. Order at 15 (citing *Universal Health Servs., Inc. v.*
7  *U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2003-04 (2016)).)
8           In the Second Amended Complaint, Relator does not attempt to assert a false certification
9  claim based on alleged non-compliance with the District bylaws.  Indeed, she now disclaims any
10 bylaws-based theory of liability: "Relator is not contending that breach of the bylaws is the basis
11 for Defendants' FCA liability."  (Opp. at 18 n.5.)  Instead, in seven new paragraphs not included
12 in her earlier pleadings (SAC ¶¶ 64-70), Relator advances two new theories of the Defendants'
13 FCA liability for QZ billing: (i) an express false certification theory—that the Defendants
14 expressly certified "that a CRNA, alone and without any supervision by anesthesiologist,
15 performed the services in question" (*id.* ¶ 66)—and (ii) an implied false certification theory—
16 that the Defendants' submission of QZ bills impliedly certified "compli[ance] with the TEFRA
17 regulations" (*id.* ¶ 69).  These theories of liability appeared nowhere in Relator's earlier
18 pleadings.  And although Relator stresses her contention that the Court dismissed her earlier
19 false-certification theory (based on the bylaws) solely in connection with the Somnia
20 Defendants' motion to dismiss (*e.g.*, Opp. at 6), she nevertheless asserts her new theories against
21 the Somnia Defendants and PST Services equally.  (*See* SAC ¶¶ 64-70 (referring only to
22 "Defendants").)  Because new theories of liability are asserted against PST Services, PST
23 Services may file a motion to dismiss the claims based on those theories.
24           **B.      Pre-March 2014 Claims Against PST Services May Be Dismissed Now.**
25           In her First Amended Complaint, Relator alleged that PST Services' involvement with
26 Somnia's billing did not begin until March 3, 2014.  (FAC ¶ 88.)  In the February Order, the
27 Court acknowledged this time limitation on the claims against PST Services: "PST is not
28 identified in any of those factual allegations [in the FAC] until March 3, 2014."  (Feb. Order at

3
REPLY IN SUPPORT OF PST SERVICES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  4-5.)  In the Second Amended Complaint, Relator again alleges that PST Services' involvement
2  began only on March 3, 2014, but she then makes no effort to distinguish her claims against PST
3  Services and against the Somnia Defendants, which involve Somnia's billing practices as early
4  as 2011.  (*Compare* SAC ¶ 58 *with id.* ¶ 95.)  For clarity and to streamline the issues, PST
5  Services' motion to dismiss seeks formal dismissal of claims based on the alleged submission of
6  false claims before March 3, 2014.
7       Relator does not oppose PST Services' motion on its merits, and she offers no arguments
8  that PST Services could be liable for false claims submitted earlier than March 2014.  Nor could
9  she.  *See, e.g.*, *Miller v. Holzman*, 563 F. Supp. 2d 54, 144 (D.D.C. 2008) (defendants have joint-
10  and-several FCA liability only for those "false claims" with which they were involved), *aff'd in*
11  *part, rev'd in part on other grounds*, 608 F.3d 871 (D.C. Cir. 2010).  Relator, therefore, could
12  simply concede that she is not asserting pre-March 2014 claims against PST Services, or that any
13  such claims should be dismissed, and thus allow the case to proceed with that issue clarified.
14  Relator instead opposes the motion on the technical ground that, because the March 2014 issue
15  was not separately carved out in PST Services' first Rule 12(b)(6) motion (a motion seeking
16  dismissal of Relator's *entire* First Amended Complaint rather than a subset of claims), PST
17  Services should not be able raise that pleading deficiency now in a second Rule 12(b)(6) motion.
18       To be sure, some courts have noted that Rule 12 can be read to technically bar a
19  defendant from asserting a failure-to-state-a-claim defense in a Rule 12(b)(6) motion against an
20  amended complaint where the defense was not asserted, but could have been, in a Rule 12(b)(6)
21  motion against the earlier complaint.  *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317-
22  18 (9th Cir. 2017) (collecting cases), *petition for cert. on other grounds filed*, No. 17-204 (U.S.
23  Aug. 7, 2017).  But the Ninth Circuit has held that such a technical application of that rule is
24  unnecessary and inefficient.  *Id.* at 318-19 (citing *Leyse v. Bank of Am.*, 804 F.3d 316, 321-22
25  (3d Cir. 2015); *Albers v. Bd of Cnty. Comm'rs*, 771 F.3d 697, 704 (10th Cir. 2014)).  This is
26  because Rule 12(h) makes clear that failure-to-state-a-claim defenses are not waived by failing to
27  raise them in a Rule 12(b)(6) motion to dismiss.  *See id.* at 317-18 ("A defendant who omits a
28  defense under Rule 12(b)(6) . . . does not waive that defense.").  Those defenses "may be

asserted in other ways," including in a Rule 12(c) motion for judgment on the pleadings, which is governed by the same standard as a Rule 12(b)(6) motion. *Id.* at 318. Courts, including the Ninth Circuit, have thus held that there is no practical reason not to consider a failure-to-state-a-claim defense on a second Rule 12(b)(6) motion rather than insisting that the defendant file an answer and then refile the motion under Rule 12(c). *See id.* ("Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) [e.g., Rule 12(c)] can produce unnecessary and costly delays, contrary to the direction of Rule 1."); *Jaeger v. Howmedica Osteonics Corp.*, No. 15-cv-164, 2016 WL 520985, at *6 (N.D. Cal. Feb. 10, 2016) ("There is no reason to waste the resources of the parties and the Court by dismissing the instant motion on procedural grounds, then waiting for Defendant to refile an identical motion with a different title."). Yet that is precisely what Relator is asking the Court to do.[2] To avoid further delay and additional motions practice, the Court should dismiss the pre-March 2014 claims against PST Services now.

## II. PST SERVICES' MOTION SHOULD BE GRANTED ON THE MERITS.

On its merits, PST Services' motion should be granted because the Second Amended Complaint fails to plead either of its new false-certification theories of QZ-based liability.[3]

### A. Relator's "Express False Certification" Theory Fails.

Relator's express false certification theory is that, in submitting bills with the QZ modifier, PST Services "made an express representation to the government that a CRNA, alone and without any supervision by an anesthesiologist, performed the services in question." (SAC ¶ 66.) As explained in PST Services' opening brief, the use of the QZ modifier makes no such

---

[2] The only examples Relator cites of courts denying a later Rule 12(b)(6) motion are district court orders that predate the Ninth Circuit's *Apple iPhone* decision: *Brooks v. Caswell*, No. 3:14-cv-1232, 2016 WL 866303 (D. Or. Mar. 2, 2016), and *Townsend Farms v. Goknur Gida*, No. 15-cv-837, 2016 WL 10570248 (C.D. Cal. Aug. 17, 2016). In *Brooks*, the court acknowledged its ability to consider the motion to dismiss but noted that, given the advanced stage of the case, deciding the issues at hand would be better on a summary judgment motion. 2016 WL 866303, at *4 & n.1. In *Townsend*, the court believed that the defendant's failure-to-state-a-claim defense had been "waived," 2016 WL 10570248, at *6—a belief directly at odds with both Rule 12(h) and *Apple iPhone*.

[3] And, as noted above, Relator presents no merits opposition to the motion to dismiss pre-March 2014 claims against PST Services.

1  representation, let alone an "express" one.  (PST Servs.' Mem. at 7-8 [Doc. 77-1].)

2  QZ is not defined by any authority as CRNA practice "alone and without any
3  supervision by an anesthesiologist."  The use of the QZ modifier does not and cannot constitute
4  an "express" representation to that effect, where no authority gives it the meaning Relator
5  attempts to implant by *ipse dixit*.[4]  Indeed, Relator's only support for the meaning she attempts to
6  graft to the QZ modifier is a quotation from a newly-added portion of the Second Amended
7  Complaint, which baldly assigns Relator's meaning to the QZ modifier without reference to any
8  supporting authority (*see* Opp. at 13), and three publications (discussed below) that actually
9  undermine Relator's contention.

10  Relator then offers four reasons why PST's arguments in support of dismissal fail, each
11  of which either obfuscates the issue or misleads:

12  "*First*," Relator asserts that, regardless of CMS's contrary definition of QZ (CMS defines
13  QZ as "CRNA service: Without medical direction by a physician"), she still has pleaded claims
14  based on alleged misuse of the "medical direction" modifier.  (Opp. at 14-15.)  Relator attempts
15  to mix her claims by asserting that the Defendants' alleged misuse of the "medical direction"
16  modifier was sometimes coupled with misuse of QZ.  (Opp. at 15.)  That theory is not alleged in
17  any of the complaints, but even if it were, it still has no bearing on the definition of QZ.  As
18  noted throughout the opening brief and above, PST Services' limited motion to dismiss is not
19  directed to Relator's medical-direction claims.  And the sufficiency of those claims has no
20  bearing whatsoever on the "express" meaning of the QZ modifier.

21  "*Second*," Relator asserts that using the QZ modifier fails to "reflect any physician
22  involvement."  (Opp. at 15.)  This argument, like the others, does not explain how the use of QZ
23  makes the "express" representation Relator describes (as opposed to representing CMS's
24  definition of the modifier).  Without any authority (other than her own pleading) suggesting that

25

---

26  [4] Relator's asserted definition is not a factual allegation, but a legal conclusion.  "[T]he tenet that
27  a court must accept as true all of the allegations contained in a complaint is inapplicable to legal
conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, the Court need not accept
28  Relator's allegation that the use of the QZ modifier requires the service to be performed "alone
and without any supervision by an anesthesiologist."

6

REPLY IN SUPPORT OF PST SERVICES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

all physician "involvement" in a procedure must be shown on a bill, Relator quotes a wholly irrelevant section of the CMS Manual regarding billing for non-physician anesthetist services:

> If an employer-physician furnishes concurrent medical direction for a procedure involving CRNAs and the medical direction service is unassigned, the physician should bill on an assigned basis on a separate claim for the qualified nonphysician anesthetist service. If the physician is participating or takes assignment, both services should be billed on one claim but as separate line items.

(Opp. at 15-16 n.4 (quoting Manual § 140.3.4 [Doc. 49-3]).)  Relator apparently misunderstands "participating" in this provision to mean a physician's participation or involvement in a given procedure.  It actually refers to participation in the Medicare program.  In Medicare parlance, "participation" means that one has agreed to always accept claims assignment for all covered services furnished to Medicare beneficiaries. *See, e.g.*, 42 U.S.C. § 1395u(h)(1) ("[T]he term 'participating physician . . .' means a physician . . . who . . . enters into an agreement with the Secretary which provides that such physician . . . will accept payment under this part on an assignment-related basis for all items and services furnished to individuals enrolled under this part during such year.").

This provision of the Manual does not concern documentation of physician "participation" in a non-medically-directed procedure.  Instead, it explains how a "medical direction" claim should be configured depending on whether the doctor is generally "participating" in the Medicare program or has otherwise chosen to bill on an "assigned" or "unassigned" basis.[5]  In short, if in a medically directed procedure the CRNA is billing on an "assigned" basis but the physician's medical direction services are billed on an "unassigned" basis, then the claims should be billed on two separate forms.  If the physician is participating in Medicare or billing on an assigned basis, both services should be billed on the same claim.  But one should not bill an "assigned" service and an "unassigned" service on the same claim form.

"*Third*," Relator argues that, if QZ can be used in lieu of the "medical supervision" modifier, then the "medical supervision" modifier would be superfluous and there would "never

---

[5] Payment for CRNAs may be made only on an assigned basis, although physicians can choose to bill on an "unassigned" basis.  *See* CMS Manual § 140 ("Payment for qualified nonphysician anesthetist services is made only on an assignment basis.")

7

be a situation where providers would use the Medical Supervision billing code." (Opp. at 16.) Again, this argument does not address the issue at hand—how using QZ is an "express" representation of something other than CMS's definition. Regardless, Relator is wrong because she assumes, incorrectly, that the only providers of anesthesia services are physicians and CRNAs who work for the same practice, as was the case at Primary Anesthesia Services. Not so. Where the physician and CRNA are independent of one another (i.e., work for separate practices), the "medical direction" modifier (if applicable) or the "medical supervision" modifier (if the requirements for "direction" were not met) would be used to ensure that both providers are paid. The "medical supervision" modifier could also be used in cases where medical doctors were supervising other professionals, such as an anesthesia assistant.

"*Finally*," Relator argues that her definition of QZ is supported by "several sources interpreting the [CMS] Manual." (Opp. at 17.) This is the only argument she makes that even attempts to address the "express" representation question. But it fails because the three "sources" she cites are newsletter articles that, at best, are irrelevant and, at worst, entirely undercut her argument [6]:

- Thomas R. Vetter et al., *Physician Supervision of Nurse Anesthetists*: An editorial in a medical association newsletter discussing an inconclusive study on whether patients have increased access to anesthesia care in "opt out" states. Notably, this editorial explains that, for purposes of compiling statistics, **"the modifier QZ may not be a valid surrogate for the scenario of no anesthesiologist being involved in the anesthesia care provided"**—because of the prevalence of "hospitals that exclusively filed anesthesia claims using the modifier QZ" despite also having "affiliated physician–anesthesiologists." (Ex. A at 2-3.) It states that **"the increasing use of the QZ modifier may not equate to an increasing absence of an anesthesiologist in attendance."** (*Id.* at 3.)

- Jason R. Byrd et al., *Billing for Anesthesia Services and the QZ Modifier: A Lurking Problem*: An opinion article in a medical association newsletter. The article laments the prevalence of billing all services under QZ not because the practice is prohibited or improper but simply because it has the potential to inflate reported statistics on CRNA practice and thus support studies advocating more CRNA practice (something the physician association appears to oppose). (Ex. B at 2-3.) The article states that when the authors speak **"with anesthesiologists across the country, [they] often learn that practices bill QZ despite the fact that an anesthesiologist is supervising or directing the case."** (Ex. B at 3.)

---

[6] Even though these articles are the sole authority Relator cites to support her "express" representation assertions, she conspicuously fails to include copies of them with her opposition. For the Court's convenience, PST Services attaches them here as Exhibits A, B, and C.

- Wisconsin Association of Nurse Anesthetists, *Fraud in Anesthesia Billing*: An online article for a trade association warning anesthesia providers to properly bill "medical direction" claims or risk FCA liability. The article includes only a passing reference to QZ as one of the various modifiers. (Ex. C at 2.)

These articles—which have no legal force—in no way "interpret[] the Manual," let alone suggest that submitting a bill with the QZ modifier constitutes an "express" representation contrary to the Manual. If anything, these articles simply demonstrate that the QZ-billing practice Relator complains of is commonplace.[7] Keep in mind, these were cited *by Relator* as, what are presumably, the authorities she thinks best support the interpretation she espouses in support of her "express certification" contention.

### B. Relator's "Implied False Certification" Theory Fails.

In the Second Amended Complaint, Relator does not attempt to assert an implied false certification claim based on alleged non-compliance with the District bylaws, the theory that this Court dismissed for failure to adequately plead materiality. (*See* Feb. Order at 15-16.) Indeed, she now disclaims any bylaws-based theory of liability: "Relator is not contending that breach of the bylaws is the basis for Defendants' FCA liability." (Opp. at 18 n.5.) Given that concession, at the very least, this Court should again dismiss any claim by Relator with respect to the QZ code that is based on a theory of implied false certification of compliance with the District's bylaws.

Relator's new implied false certification theory is that, in submitting bills with the QZ modifier, the Defendants (including PST Services) impliedly certified "that they had complied with the TEFRA regulations applicable to their billing decision." (SAC ¶ 69.) In its opening brief, PST Services pointed out that Relator fails to identify a specific "TEFRA regulation" that was allegedly violated in connection with QZ billing—a shortcoming that is fatal to the implied false-certification claim. In response, Relator argues only that she "plainly alleged that Defendants routinely failed to meet the seven requirements for Medical Direction and kept incomplete or misleading patient records." (Opp. at 19.) In other words, Relator (again) says

---

[7] Remarkably, Relator cites these newsletters but ignores the guidance issued by Noridian, the Medicare Administrative Contractor for California, which permits using QZ in the circumstances alleged. (*See* Noridian FAQs Q.1 [Doc. 49-4]; *see also* PST Servs.' Mem. at 6-7.)

1 that she properly pleaded claims based on misuse of the "medical direction" modifier.  Again,

2 that argument is a non-sequitur: PST Services' motion is directed to Relator's QZ-billing claims,

3 not her medical-direction claims.  Relator has not cited, in her pleading or even in her opposition,

4 a single "TEFRA regulation" that PST Services violated in connection with billing the QZ

5 modifier.[8]

6       To change the subject, Relator references an email described in her Second Amended

7 Complaint in which PST Services and Somnia employees allegedly discuss changing the billing

8 for "five services" from "medical direction" to QZ.  (Opp. at 19 n.6.)  And Relator contends that

9 if that change was made, it was done in "express derogation of the regulations requiring

10 documentation that the physician personally participated in, and closely oversaw, the CRNA's

11 work throughout the anesthesia process."  (*Id.*)  The question at hand, however, is not whether

12 the Defendants ever changed a bill to include the QZ modifier but whether, in submitting a bill

13 with that modifier, PST Services impliedly certified compliance with a particular "TEFRA

14 regulation" (or other legal or contractual requirement).  The email has no bearing on that

15 question.

16       Moreover, the Second Amended Complaint also fails to allege that compliance with the

17 unspecified "TEFRA regulations" was "material" to the government's payment decision, as

18 required under *Escobar*.  As this Court observed in its February Order, the materiality inquiry

19 focuses not on whether a regulation was violated but on whether the government still would not

20 have paid if it knew of the violation.  *See Escobar*, 136 S. Ct. at 2003-04 ("[I]f the Government

21 regularly pays a particular type of claim in full despite actual knowledge that certain

22 requirements were violated, . . . that is strong evidence that the requirements are not material.").

23 Relator contends that she alleged "how the reimbursements" differ under the various billing

24 codes.  (Opp. at 19.)  But whether reimbursement rates are different (or even whether the

25 government could have paid a different rate) is not a "fact" showing that the government would

---

[8] As shown in the opening brief, the only relevant regulation specifically provides that a CRNA who is "not medically directed" may seek the full Medicare reimbursement (that is, use the QZ modifier on the bill).  *See* 42 C.F.R. § 414.60(a).

10
REPLY IN SUPPORT OF PST SERVICES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  not have paid the QZ bills if it knew there was some level of physician involvement with the
2  service (especially where, as here, the modifier is used in compliance with the Medicare
3  Administrative Contractor's guidance).  *See, e.g.*, *United States ex rel. Ferris v. Afognak Native*
4  *Corp.*, No. 3:15-cv-150, 2016 WL 9088706, at *3 (D. Alaska Sept. 28, 2016) ("The relator must
5  allege some facts that show that the government actually does not pay claims if they involve the
6  statutory violations in question."); *see also Escobar*, 136 S. Ct. at 2004 (explaining that, for
7  purposes of materiality, the government's ability to reject payment is not sufficient to show that
8  the government actually would not make payment).  On the contrary, the newsletter articles
9  Relator cites state that the use of QZ even with physician involvement is a prevalent practice.
10 (*See* Exs. A-B.)  And Noridian, the Medicare Administrative Contractor for California,  has
11 endorsed it.  (*See* Noridian FAQs Q.1 [Doc. 49-4].)  For this additional reason, Relator's implied
12 false certification claim fails.

## CONCLUSION

For the reasons stated above and in PST Services' opening brief, the Court should dismiss two subsets of the claims asserted against PST Services: (i) express and implied false certification claims based on the QZ modifier; and (ii) claims against PST Services based on alleged false claims submitted before March 3, 2014.

Dated:  April 24, 2018                                  KING & SPALDING LLP


                                                        By:  /s/ W. Scott Cameron
                                                             W. Scott Cameron

                                                             Attorneys for Defendant
                                                             PST Services, LLC