UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES and the STATE OF CALIFORNIA ex rel. NICOLLE O'NEILL, and NICOLLE O'NEILL,<br><br>Plaintiffs/Relator,<br><br>v.<br><br>SOMNIA, INC., PRIMARY ANESTHESIA SERVICES, PST SERVICES LLC, ROBERT GOLDSTEIN, M.D., ROY WINSTON, M.D., BYRON MENDENHALL, M.D., QUINN GEE, M.D., AND MARGARET VASSILEV, M.D., and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:15-cv-00433-DAD-EPG<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br>(Doc. Nos. 77, 78) |

This matter is before the court on defendants' motions to dismiss portions of relator's second amended complaint ("SAC"). (Doc. Nos. 77, 78.) A hearing on those motions was held on May 1, 2018. Attorneys Wilmer J. Harris and Stephanie Yu appeared on behalf of relator Nicolle O'Neill. Assistant United States Attorney Vincente Tennerelli appeared on behalf of party in interest United States of America. Attorneys W. Scott Cameron and Bradley Lingo appeared on behalf of defendant PST Services LLC ("PST"). Attorney Jason Gonzalez appeared on behalf of all other defendants (the "Somnia defendants"). Having reviewed the parties'
/////

1

briefing and heard oral argument, and for the reasons that follow, defendants' motions to dismiss will be granted.

**BACKGROUND**

On March 19, 2015, relator filed her complaint under seal, alleging violations of the federal False Claims Act ("FCA"), the California False Claims Act ("CFCA"), retaliation, violation of California's Health and Labor Code, whistleblower retaliation, wrongful termination, and intentional and negligent infliction of emotional distress. (Doc. No. 1.) On November 21, 2016, the United States notified the court that it was declining to intervene in this action. (Doc. No. 16.) On November 30, 2016, the State of California did the same. (Doc. No. 17.) On December 16, 2016, the court ordered the complaint be unsealed and served on defendants by relator. (Doc. No. 18.) The first amended complaint was filed on July 7, 2017. (Doc. No. 41 ("FAC").) On August 21, 2017, defendants filed their respective motions to dismiss the FAC. (Doc. Nos. 45, 48.) After the court dismissed certain parts of the FAC (Doc. No. 70), relator filed its SAC on February 28, 2018. (Doc. No. 74.)

The factual allegations of the SAC are nearly identical to those of the FAC, and were summarized in a prior order of this court. (Doc. No. 70.) As relevant here, under the Medicare Claims Processing Manual (the "Manual") issued by the Centers for Medicare & Medicaid Services ("CMS"), there are four ways in which anesthesia services are provided and billed, based on the level of involvement by a Medical Doctor of Anesthesiology ("MDA").[1] (*Id.* at ¶ 30.) First, the service is coded as "AA" if the anesthesia services are performed personally by an anesthesiologist. (Doc. No. 49-3 at 124.) Second, services are coded as "QK", "QX", or

/////

---

[1] These definitions are derived from Chapter 12 of the Medicare Claims Processing Manual. In its order granting in part defendants' motions to dismiss the FAC, the court took judicial notice of this document. (Doc. No. 70 at 6–7.) The court again does so because it is a document produced by the government and available on a governmental website whose accuracy cannot reasonably be questioned. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015); *Paralyzed Veterans of Am. v. McPherson*, No. C064670SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) ("[I]nformation on government agency websites . . . have often been treated as proper subjects for judicial notice.").

"QY" when the services are medically directed.[2] (*Id.* at 124, 175). Third, services are coded as Medical Supervision, denoted by code "AD," where the physician is supervising more than four concurrent anesthesia procedures. (*Id.* at 124.) Finally, and of particular relevance here, the "QZ" code may be used to indicate "CRNA service: Without medical direction by a physician." (*Id.* at 120, 175.)

Relator brings a total of eight claims in this action. The pending motions to dismiss seek dismissal of counts one, two, and three of the SAC to the extent they concern defendants' alleged misuse of the QZ code. (Doc. No. 77-1 at 5; Doc. No. 78-1 at 5.) Defendant PST also moves to dismiss any FCA causes of action against it to the extent they involve submission of claims prior to March 3, 2014. (Doc. No. 77-1 at 5.) On April 17, 2018, relator filed oppositions to those motions. (Doc. Nos. 80, 81). Replies were filed on April 24, 2018. (Doc. Nos. 82, 83). On April 26, 2018, the United States filed its statement of interest. (Doc. No. 84.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light

---

[2] To be properly billed under Medical Direction, the MDA must meet certain conditions or perform certain tasks, such as monitoring the administration of anesthesia at certain intervals and remaining available to diagnose and treat emergencies. *See* 42 C.F.R. §§ 414.46(d)(i), 415.110. In addition, a physician may medically direct no more than four procedures simultaneously. 42 C.F.R. § 415.110(a)(2).

3

most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on such a motion, the court may consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## DISCUSSION

**A.    Procedural Bar to Defendants' Arguments**

Before turning to the merits of defendants' motion to dismiss, the court first addresses relator's contention that defendants are barred from raising several of the arguments which have been presented in their moving papers. Relator contends that those arguments are precluded by the doctrine of law of the case. (Doc. No. 80 at 12–15; Doc. No. 81 at 12–18.)

"Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)). Application of the doctrine is discretionary, and is "founded upon the sound public policy that litigation must come to an end." *Id.* (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 2007) (en banc)). The doctrine is subject to the following three exceptions: "(1)

4

the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Id.* (quoting *Jeffries*, 114 F.3d at 1489).

The court concludes that to the extent defendants have advanced new arguments that could have been advanced in their prior motions to dismiss, or alternatively have repeated arguments already rejected by the court, the court is not barred from considering those arguments here. It is true that under a strict application of Rule 12(g)(2), "a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (citing Fed. R. Civ. P. 12(g)(2)). However, the Ninth Circuit emphasized that Rule 12(g)(2) is to be read "in light of the general policy of the Federal Rules of Civil Procedure . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.* (quoting Fed. R. Civ. P. 1). To that end, the Ninth Circuit has acknowledged and approved of the "practical wisdom" employed by multiple district courts that have ruled on the merits of late-filed Rule 12(b)(6) motions despite the language of Rule 12(g)(2) seemingly precluding consideration of those arguments. *Id.* at 319 (citing *Banko v. Apple, Inc.*, No. 13–02977 RS, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013); *Davidson v. Countrywide Home Loans, Inc.*, No. 09–CV–2694–IEG JMA, 2011 WL 1157569, at *4 (S.D. Cal. Mar. 29, 2011); and *Doe v. White*, No. 08–1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010)).

The court finds nothing to suggest that defendants' arguments have been raised in an attempt to delay or impede these proceedings. After this court partially dismissed the FAC, relator elected to file an entirely new complaint, and the law in this Circuit is clear that an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997). Under these circumstances, and because the undersigned finds that the arguments advanced in the pending motions to dismiss are brought in good faith, the court will join with those district courts that have fully considered late-filed motions to dismiss. *See, e.g.*, *McMillan v. Ringler*, No. 2:13-cv-0578-MCE-KJN, 2016 WL 374509, at *1 (E.D. Cal. Feb. 1, 2016) (permitting defendant to proceed on his motion to dismiss

an amended complaint despite "rais[ing] new arguments as well as some arguments that were raised in the first motion to dismiss and rejected by the court"), *report and recommendation adopted*, 2016 WL 1267815 (E.D. Cal. Mar. 31, 2016); *Gundy v. Cal. Dep't of Corr. & Rehab.*, No. 1:12-cv-01020-LJO-MJS, 2013 WL 522789, at *6 (E.D. Cal. Feb. 11, 2013) ("Courts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available."), *report and recommendation adopted*, 2013 WL 789096 (E.D. Cal. Mar. 1, 2013). The court will, therefore, give full consideration to all of the arguments advanced in defendants' pending motions.

**B. FCA Claims**

The court next considers whether the SAC states a cognizable claim for relief with respect to defendants' alleged misuse of the QZ billing code. A complaint alleging fraud, as does relator's SAC, must satisfy the heightened pleading requirements of Rule 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Under Rule 9(b), the circumstances constituting the alleged fraud must be specific enough to give each defendant notice of its particular misconduct so that the defendant can defend against the charge instead of merely denying that it did anything wrong. *Kearns*, 567 F.3d at 1124 (citing *Bly-Magee*, 236 F.3d at 1019). To satisfy the particularity standard of Rule 9(b), the plaintiff must set forth more than the neutral facts necessary to identify the transaction at issue. *Id*. (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011)); *see also Vess*, 317

F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

Relator contends in her complaint that defendants committed two violations of the FCA as well as a violation of the CFCA. The CFCA was modeled on the FCA, and state courts turn to federal FCA case law for guidance in interpreting the CFCA. *Mao's Kitchen v. Mundy*, 209 Cal. App. 4th 132, 146 (2012). As with claims alleging violations of the FCA, claims brought under the CFCA must also meet a heightened pleading standard. *United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1152 (N.D. Cal. 2005) (citation omitted).

Relator's first cause of action alleges a violation of 31 U.S.C. § 3729(a)(1)(A), which makes it unlawful to "knowingly present[ ], or cause[ ] to be presented, a false or fraudulent claim for payment or approval." (SAC at ¶¶ 136–39.) Relator's second cause of action alleges a violation of 31 U.S.C. § 3729(a)(1)(B), making it unlawful to "knowingly make[ ], use[ ], or cause[ ] to be made or used, a false record or statement material to a false or fraudulent claim."[3] (*Id.* at ¶¶ 140–43.) Relator's third cause of action alleges a violation the CFCA, California Government Code § 12651(a)(1), which contains language identical to that in 31 U.S.C. § 3729(a)(1)(A). (*Id.* at ¶¶ 144–49.) As such, the court analyzes these three claims in tandem. *See United States v. Safran Grp.*, No. 15-cv-00746-LHK, 2017 WL 235197, at *4 (N.D. Cal. Jan. 19, 2017) (citing *Fassberg Const. Co. v. Hous. Auth. of City of L.A.*, 152 Cal. App. 4th 720, 735 (2007) (as modified)) ("Where, as here, the statutory provisions of the federal FCA and California FCA are the same, courts apply the same analysis to federal and California FCA claims.").

The "archetypal" False Claims action involves a private company overcharging under a government contract, such that "the claim for payment is itself literally false or fraudulent." *U.S. ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1170 (9th Cir. 2006) (citation omitted). Such claims are referred to as "factually false" claims. *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 900 (9th Cir. 2017) (quoting *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d

---

[3] Relator's SAC states that it was brought pursuant to 31 U.S.C. § 3729(a)(2), however § 3729(a)(2) does not provide a cause of action. (*See* SAC at 36.) The court interprets the SAC as instead referring to § § 3729(a)(1)(B).

7

295, 305 (3d Cir. 2011)). That said, the FCA is not limited to such claims, but instead is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Hendow*, 461 F.3d at 1170 (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)). For instance, the FCA also encompasses so-called "legally false certification" theories of liability. *See U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008); *United States v. Kinetic Concepts, Inc.*, No. CV 08-01885-BRO (AGRx), 2017 WL 2713730, at *7 (C.D. Cal. Mar. 6, 2017). Legally false certifications come in two forms: express false certification, and implied false certification. *Conner*, 543 F.3d at 1217; *Hendow*, 461 F.3d at 1171. Under an express false certification theory of liability, "the entity seeking payment [falsely] certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). By contrast, under an implied false certification theory,

> when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if the claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement . . . the defendant has made a misrepresentation that renders the claim "false or fraudulent" under § 3729(a)(1)(A).

*Campie*, 862 F.3d at 901 (quoting *Universal Health Servs., Inc. v. United States (Escobar)*, ___ U.S. ___, 136 S. Ct. 1989, 1995 (2016)). When proceeding under either theory, however, relator must allege facts demonstrating (1) a false statement or fraudulent course of conduct; (2) made with scienter; (3) that was material; causing (4) the government to pay out money or forfeit moneys due. *Id.* at 902.

In the FAC, relator alleged that defendants' use of the QZ code violated the FCA because its use was prohibited by District bylaws. The court found that this theory failed to state a claim for relief because relator failed to properly allege that any such violation, even if proven, was material. (Doc. No. 70 at 15–16.) In the SAC, relator alleges two new theories of liability. First, relator alleges that when defendants used the QZ code, they falsely "made an express representation to the government that a CRNA, alone and without any supervision by an anesthesiologist, performed the services in question." (SAC at ¶ 66.) Second, relator now alleges

8

that defendants "submitted demands for payment that contained false implied certifications that they had complied with the TEFRA [the Tax Equity and Fiscal Responsibility Act] regulations applicable to their billing decision." (*Id.* at ¶ 69.) Relator identifies these theories as being based upon express and implied false certifications, respectively. (*See* SAC at ¶¶ 66, 69.) The court addresses each theory in turn.

        1.        <u>Express False Certification</u>

Relator's express false certification theory is based upon the allegation that defendants' use of the QZ code constituted "an express representation to the government that a CRNA, alone and without any supervision by an anesthesiologist, performed the services in question." (SAC at ¶ 66.) Defendants contend in their motions to dismiss that this theory fails to state a claim because it does not plausibly allege that any of the representations with respect to the QZ modifier were false. (*See* Doc. No. 78-1 at 12–13.)

To state a claim for relief under the FCA or CFCA, relator must allege with requisite particularity that the claims themselves were false. "An actual false claim is the *sine qua non* of an FCA violation." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) (internal quotation marks and brackets omitted). To allege falsity, relator "must not merely request payment, but also make specific representations about the goods or services provided." *Campie*, 862 F.3d at 902 (citing *Escobar*, 136 S. Ct. at 2000).

Whether relator has sufficiently alleged falsity in this case depends upon the language of the regulation, since if none of the alleged conduct is contrary to what the regulations permit, there can be no violation. The parties therefore have devoted a great deal of their briefing to arguing the circumstances under which the QZ code may or may not be used under the Manual. Relator contends in the SAC that anesthesia services may be coded as QZ if, and only if, "there is no MDA involved and the services are performed by a CRNA." (SAC at ¶ 35.) Thus, relator alleges that use of the QZ modifier constitutes "an express representation to the government that a CRNA, *alone and without any supervision by an anesthesiologist*, performed the services in question." (*Id.* at ¶ 66 (emphasis added).) If an anesthesiologist did provide supervision, and the QZ code was still used, relator asserts that this would give rise to FCA liability.

9

Defendants vigorously dispute this characterization. Specifically, defendants contest the notion that a CRNA must operate independently and without supervision from an anesthesiologist in order for the QZ code to be employed. (*See* Doc. No. 78-1 at 13 ("There is simply no support, either in the SAC or in the regulations, for Relator's bald assertion that the QZ modifier can only be used if a CRNA works entirely alone and without any form of supervision.").) Instead, defendants direct the court's attention to the definition contained in the Manual, which states that the QZ code may be used for "CRNA Service: Without medical direction by a physician." (Doc. No. 49-3 at 175.) As discussed above, medical direction is a term of art appearing within the Manual, and there are precise requirements that providers must meet in order to code a service as medically directed. *See* 42 C.F.R. §§ 414.46(d)(i), 415.110. Defendants claim that under the terms of the Manual, the only restriction on use of the QZ code is that it may not be used to indicate CRNA service that was medically directed. In all other instances, defendants argue that using the QZ code is permissible under the plain language of the regulations. Stated differently, defendants contend the QZ code functions as something of a catch-all provision.

The parties have not directed the court to any prior cases interpreting this particular set of regulations, leaving the court only with the Manual itself and the parties' arguments for guidance. Nonetheless, having examined the Manual, the court finds that defendants' interpretation of the scope of the QZ code is more persuasive. Relator has not provided any legal authority stating that the QZ code may *only* be used in the absence of supervision by an anesthesiologist, and such a reading is not apparent from the text of the Manual. To the contrary, the most natural reading of the Manual is that unless the service was medically directed, the QZ code may be employed.[4] The Manual states only that the QZ code is to be used where CRNAs provide anesthesia services

---

[4] The court rejects relator's contention that "to the extent there is a dispute as to what services the QZ modifier encompasses, it is a factual dispute that cannot be resolved at the pleadings stage." (Doc. No. 80 at 18.) The requirements of the Manual are legal rather than factual questions, and do not depend on information produced during discovery. *See generally U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1388–95 (C.D. Cal. 2014) (interpreting the requirements of the Medicare Program Integrity Manual on a motion to dismiss and concluding that "relators misrepresent the section of the Medicare Manual on which they rely, and their claim, to the extent based on that interpretation, is not viable"), *aff'd*, 678 Fed. App'x 594 (9th Cir. 2017).

"without medical direction by a physician." (Doc. No. 49-3 at 175.) That language does not suggest that CRNAs must operate independently in order to use the QZ code—it merely states that the QZ code may not be used if all of the requirements for medical direction have been satisfied. Outside of that scenario, use of the QZ code does not appear to be prohibited by any rule or regulation.

This interpretation is bolstered by other regulations promulgated by CMS. For instance, CMS regulations provide that in order for an anesthesiologist to bill for "personally performed" services, the physician must "perform[] the entire anesthesia service alone." 42 C.F.R. § 414.46(c)(1)(i). CMS did not include a corresponding provision in the regulations governing CRNA billing, although it could have done so, for instance by stating that the QZ code may be used when the CRNA "performs the entire anesthesia service alone." The fact that such language is absent from the regulations governing use of the QZ code indicates that that CRNAs are not required to operate independently in order for the QZ code to be employed. Consequently, use of the QZ code was not false or misleading simply because a CRNA performed the service with supervision. Defendants' motions to dismiss the QZ code claims based on relator's express certification theory will therefore be granted.

2. Implied False Certification

Relator also attempts to state a claim based on an implied false certification theory. In this regard, the SAC alleges, "[d]efendants submitted demands for payment that contained false implied certifications that they had complied with the TEFRA regulations applicable to their billing decision." (SAC at ¶ 69.) Defendants also move to dismiss the claim based on this theory to the extent it concerns the QZ code.

It is unclear from the face of the SAC which TEFRA regulations relator is referring to in advancing this claim. However, at the hearing on defendants' motions to dismiss, relator's counsel clarified that relator is alleging violations of "all seven" TEFRA regulations. (Doc. No. 88 at 19:23–25.) The court interprets this statement as referring to the seven requirements that must be met in order to code an anesthesiology procedure as medically directed. *See* 42 C.F.R. §§ 414.46(d)(i), 415.110. However, these regulations appear to have little relation to the QZ

code, instead relating only to billing for medical direction. As the court understands the regulatory scheme at issue here, the only conceivable relationship between those seven TEFRA regulations and the QZ code relates to the matters discussed above—namely, that the QZ code cannot be used if all seven requirements for medical direction are satisfied. Both parties appear to agree that doing so could potentially give rise to FCA liability. However, at oral argument, relator's counsel confirmed that the SAC contains no allegations that the QZ code was used in instances where the requirements for medical direction were all satisfied. (Doc. No. 88 at 5:10–16.) Absent such an allegation, the court concludes that a violation of any of the seven TEFRA regulations, even if proven, would have no bearing on defendants' use of the QZ code. Accordingly, defendants' motions to dismiss relator's first, second, and third causes of action to the extent they are based on the alleged use of the QZ code will be granted.[5]

**C.     Dismissal Premised on Alleged False Claims Prior to March 3, 2014**

Defendant PST next argues that all of relator's claims brought against it should be dismissed to the extent they are based on alleged false claims submitted prior to March 3, 2014. Defendant PST points out that none of the allegations prior to that date alleges any involvement by defendant PST. Relator does not oppose this argument on its merits. Indeed, the SAC specifically alleges that on or about March 3, 2014, "PAS/Somnia engaged PST Services . . . to handle their billing and to 'fix' the problems that were becoming too obvious and overwhelming to manage." (SAC at ¶ 95.) Thus, on the face of the SAC, PST is alleged to have had no involvement in any of the billing or coding allegations until that date. Instead, relator requests that the court deny the motion because the court has implicitly rejected this argument in its prior order or, alternatively, because defendant PST failed to raise it in its first motion to dismiss and

---

[5] In the wake of the Supreme Court's decision in *Escobar*, precisely what a plaintiff must plead to state an FCA claim based on a theory of implied false certification is subject to some question in the Ninth Circuit. *See generally United States v. Stephens Inst.*, ___F.3d___, ___, 2018 WL 4038194, at *4–5 (9th Cir. Aug. 24, 2018). It is unclear, for instance, whether the standard for an implied false certification claim laid out in *Ebeid* remains viable. *See id.* at *4. This uncertainty, however, does not impact the court's analysis in this case and the court finds that relator's implied false certification claim is subject to dismissal as it relates to the QZ code in any event, for the reasons explained above.

12

should be precluded from doing so now. (Doc. No. 81 at 15–17.)

In its first motion to dismiss, defendant PST did not specifically argue for dismissal on this basis, although it could have done so. (*See* Doc. No. 45.) Nonetheless, as discussed above, the court does not find that defendant PST is precluded from advancing the argument now for the first time. Moreover, the court finds that defendant PST's argument is well taken given the SAC's explicit allegation that PST was not involved in any of the alleged coding and billing improprieties until March 3, 2014. (SAC at ¶¶ 95–96.) Accordingly, the court will grant defendant PST's motion to dismiss.

**D.     Leave to Amend**

Finally, the court addresses relator's request that if the court grants the pending motions to dismiss, that it also grant further leave to amend the SAC. (Doc. No. 80 at 25.) "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). Otherwise, a party must seek leave of court to amend a pleading or receive the opposing party's written consent. *Id.*

The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend pleadings] when justice so requires." *Id.* Nevertheless, leave to amend need not be granted when the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See AmerisourceBergen Corp. v. Dialysist W. Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)). "Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Haw.*, 902 F.3d 1385, 1397 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330–31 (1971)). "The party opposing leave to amend bears the burden of showing prejudice." *Serpa v. SBC Telecomms.*, 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)); *see Clarke v. Upton*, 703 F. Supp. 2d 1037, 1041 (E.D. Cal. 2010); *see also Alzheimer's Inst. of Am. v. Elan Corp.*, 274 F.R.D. 272, 276 (N.D. Cal. 2011). Amendment is proper "if the deficiencies can be cured with additional

allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint.'" *United States v. Corinthian Colls.*, 655 F.3d 984, 955 (9th Cir. 2011) (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)).

Here, relator has offered no explanation as to how further amendment could cure any the deficiencies of the SAC identified above. At oral argument, relator's counsel confirmed that the SAC contains no factual allegation that the QZ code was used even though all seven of the requirements for medical direction were met. Under the analysis set forth above, that factual scenario would appear to be the only instance in which employment of the QZ code to indicate CRNA service could plausibly give rise to liability under the FCA as a matter of law. Relator's counsel also confirmed at the hearing that the SAC contains no allegations of any FCA or CFCA violations by defendant PST prior to March 3, 2014, and did not suggest that relator could make any such allegations in good faith. The court also notes that relator has already been given multiple opportunities to amend her complaint, and that this case remains at the pleading stage despite having been filed more than three years ago.

Under these circumstances, the court finds that granting further leave to amend would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). The court previously dismissed the claims at issue here in its prior order. (Doc. No. 70 at 23.) Having now done so for a second time, the court is convinced that relator cannot adequately allege an FCA or CFCA claim based upon alleged misuse of the QZ code, nor can it allege any such claims against defendant PST with respect to claims submitted prior to March 3, 2014. Therefore, the granting of further leave to amend is not warranted.

**CONCLUSION**

For these reasons,

1. Defendants' motions to dismiss (Doc. Nos. 77, 78) are granted;
2. The first, second, and third causes of action in the SAC are dismissed with respect to any claims based upon use of the QZ modifier; and

/////

14

3. The first, second, and third causes of action in the SAC are dismissed as to defendant PST with respect to any claims submitted prior to March 3, 2014.

IT IS SO ORDERED.

Dated: **September 7, 2018**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE