Jeffrey S. Bucholtz (pro hac vice)
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
jbucholtz@kslaw.com
(202) 626-2907

Taylor E. Whitten
KING & SPALDING LLP
621 Capitol Mall
Suite 1500
Sacramento, CA 95814
twhitten@kslaw.com
(916) 321-4800

Attorneys for Defendant
PST SERVICES, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES and the STATE OF CALIFORNIA *ex rel*. NICOLLE O'NEILL et al., | Case No. 1:15-cv-433-DAD-EPG |
| Plaintiffs/Relator, | **DEFENDANT PST SERVICES, LLC'S OPPOSITION TO RELATOR'S MOTION FOR RECONSIDERATION** |
| v. | Action Filed:  March 19, 2015 |
| SOMNIA, INC. et al., | Judge: Hon. Dale A. Drozd |
| Defendants. | |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 2

III.   ARGUMENT ............................................................................................................ 3

      A.    Relator Has Unreasonably Delayed in Filing Her Motion........................ 4

      B.    Relator's Evidence Is Irrelevant to the Court's Legal Interpretation of
           the QZ Modifier. .......................................................................................... 6

      C.    Relator's Evidence Is Not New and Does Not Support Her Argument.................... 7

      D.    Relator Will Suffer No "Manifest Injustice" If Her Motion Is Denied. ................. 10

IV.   CONCLUSION........................................................................................................ 10

# I.      INTRODUCTION

Nearly four years after this Court dismissed Relator Nicolle O'Neill's claims against PST Services, LLC, because she could not state a claim as a matter of law (*see* Dkt. 95), she is asking the Court to reconsider that decision. But her arguments now are much the same as they were then, and her supposed new evidence changes nothing.

Relator argues that three categories of evidence she received in discovery—which began in 2018 and ended a year ago—support her misinterpretation of the QZ billing modifier for anesthesia services. But as Relator admits, this Court already rejected her "contention that the meaning of the QZ modifier is a factual dispute." (Harris Decl. ¶ 4.) As the Court recognized, the "requirements of the [Medicare Claims Processing] Manual are legal rather than factual questions, and do not depend on information produced during discovery." (Dkt. 95 ("Order") at 10 n.4.) This Court correctly interpreted the QZ modifier as a matter of law, holding that its plain language does not support Relator's interpretation. (*Id.* at 10-12.)  It should not change that ruling now.

At its heart, Relator's motion argues that this Court erred in its legal conclusion as to the QZ modifier's meaning. But disagreeing with a court's legal decision is not a proper basis for a motion for reconsideration—and none of the supposedly new facts that Relator identifies provides any basis for this Court to rethink its conclusion.  This Court should deny Relator's motion for at least four reasons.

*First*, Relator's motion is not timely. She has no legitimate reason for waiting so long to ask this Court to change its legal interpretation of the QZ modifier. The interpretation Relator now proposes is the same one she proposed in her Second Amended Complaint ("SAC," Dkt. 74) and that this Court rejected in 2018. Yet she waited almost four years to seek reconsideration. That unreasonable delay alone justifies denying her motion.

*Second*, as this Court already held, factual discovery is irrelevant to the legal question of what the QZ modifier means. Even if Relator's evidence were to establish that a few independent parties subjectively agreed with her interpretation of the modifier—and it does not—that would not change the legally correct interpretation that this Court adopted.

1    *Third*, Relator's reliance on new evidence fails on its own terms, because that evidence

2    does not establish that anyone (other than her own paid expert) agrees with her interpretation of

3    the QZ modifier. The supposedly new facts she cites are consistent with the Court's holding that

4    "unless the service was medically directed, the QZ modifier may be used" (Order at 10), and her

5    expert's contrary legal opinion is not proper evidence on a motion for reconsideration.

6    *Fourth*, Relator will not suffer any "manifest injustice" if her motion is denied.

7    "[T]he orderly administration of lengthy and complex litigation such as this requires the

8    finality of orders be reasonably certain." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882

9    F.2d 364, 369 n.5 (9th Cir. 1989). Relator filed this action in 2015, and this Court dismissed her

10   claims against PST Services in 2018. She is finally in the process of resolving her claims against

11   defendants Somnia, Inc. and Primary Anesthesia Services. Now is not the time to rehash the

12   same arguments made and ruled upon four years ago.

13   **II.    BACKGROUND**

14   Relator asserted three causes of action against PST Services under the federal and

15   California False Claims Acts ("FCA"). Her claims were each based on the same theory: PST

16   Services submitted or caused to be submitted false claims to federal and state healthcare

17   programs for anesthesia services. Anesthesiology bills are coded with "modifiers" that show how

18   the Medicare-allowable fee should be calculated and allocated between medical doctors and

19   certified registered nurse anesthetists ("CRNAs"). There are four different options under the

20   Medicare Claims Processing Manual ("Manual"):

21   1. The "AA" modifier should be used if an anesthesiologist personally performs the

22      services. (Order at 2.)

23   2. The "QK," "QX," or "QY" modifiers should be used when the services are medically

24      directed. (*Id.* at 2–3.)

25   3. The "AD" modifier may be used when an anesthesiologist is supervising more than

26      four concurrent anesthesia procedures. (*Id.* at 3.)

27   4. And the "QZ" modifier may be used when a CRNA is not operating under the

28      medical direction of a physician.  More specifically, the Manual defines the QZ

2

1   modifier as "CRNA service: Without medical direction by a physician." (*Id.*)

2   As relevant here, Relator's SAC alleged that when PST Services used the QZ modifier, it

3   falsely made "an express representation to the government that a CRNA, alone and without any

4   supervision by an anesthesiologist, performed the services in question." (SAC ¶ 66).

5   On September 7, 2018, this Court dismissed Relator's claims against PST Services. The

6   Court held that "the most natural reading of the Manual is that unless the service was medically

7   directed, the QZ code may be employed." (Order at 10.) The Court found no "legal authority" for

8   Relator's contrary interpretation "that the QZ code may *only* be used in the absence of

9   supervision by an anesthesiologist." (*Id.*) To the contrary, the Manual's plain "language does not

10  suggest that CRNAs must operate independently in order to use the QZ code—it merely states

11  that the QZ code may not be used if all of the requirements for medical direction have been

12  satisfied. Outside of that scenario, use of the QZ code does not appear to be prohibited by any

13  rule or regulation." (*Id.* at 11.) Relator did not allege that PST Services used the QZ modifier for

14  medically directed services. "Consequently, use of the QZ code was not false or misleading

15  simply because a CRNA performed the service with supervision." (*Id.*)

16  The Court left no doubt that it reached this conclusion on purely legal grounds. It rejected

17  Relator's argument that the QZ modifier's meaning "is a factual dispute that cannot be resolved

18  at the pleadings stage." (*Id.* at 10 n.4 (internal quotation marks omitted).) "The requirements of

19  the Manual," the Court held, "are legal rather than factual questions, and *do not depend on*

20  *information produced during discovery*." (*Id.* (emphasis added).)

21  After this Court's decision, Relator and the remaining defendants engaged in discovery

22  for three years. According to Relator, fact discovery ended on June 11, 2021, and expert

23  discovery ended on November 3, 2021. (Harris Decl. ¶ 5.) Almost one year after the close of fact

24  discovery, on the eve of a settlement with the other defendants (Mot. at 1 n.1), Relator filed her

25  motion to reconsider the Court's 2018 decision dismissing her claims against PST Services.

26  **III.    ARGUMENT**

27  Relator seeks reconsideration under Rule 54(b). Under that rule, "[a] motion for

28  reconsideration should not be granted absent highly unusual circumstances, unless the district

3

court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Freeman v. Pfeiffer*, 2020 WL 2306581, at *1 (E.D. Cal. May 8, 2020) (Drozd, J.) (cleaned up). Local Rule 230(j) further requires "that a movant show 'what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion,' 'what other grounds exist for the motion,' and 'why the facts or circumstances were not shown at the time of the prior motion.'" *Id.* "To succeed in a motion for reconsideration, a party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision." *Forte v. Schwartz*, 2018 WL 1036403, at *1 (E.D. Cal. Feb. 23, 2018). "Reconsideration is . . . not an opportunity to ask a court to rethink its earlier ruling." *Id.* "[B]ecause a previous decision constitutes the law of the case, a court should generally not upset one of its previous decisions absent a showing that it either represented clear error or would work a manifest injustice." *Lyons*, 2007 WL 1378022, at *3.

This case does not come close to presenting any of the "highly unusual circumstances" in which reconsideration is appropriate. *Freeman*, 2020 WL 2306581, at *1. Relator's unreasonable delay alone should foreclose relief. That point aside, the supposed new facts she identifies are irrelevant to the Court's decision dismissing her claims, which turned on "legal rather than factual questions" that "do not depend on information produced during discovery." (Order at 10 n.4.) And even if factual evidence were not irrelevant, Relator's evidence is not new and does not support her claims or undermine the Court's holding that "use of the QZ code was not false or misleading simply because a CRNA performed the service with supervision." (*Id.* at 11.) Finally, in no event will Relator suffer "manifest injustice" if her motion is denied. *Lyons*, 2007 WL 1378022, at *3. For all these reasons, and as explained further below, the Court should deny reconsideration.

### A.     Relator Unreasonably Delayed in Filing Her Motion.

The Court should deny Relator's motion based on her unreasonable delay in filing it. Because Rule 54(b) does not itself "address the standards which a court should apply" to motions for reconsideration, "courts look to the standards under Rule 59(e) and Rule 60(b) for guidance." *Jadwin v. Cnty. of Kern*, 2010 WL 1267264, at *10 (E.D. Cal. Mar. 31, 2010). Although the firm

deadlines imposed by Rules 59(e) and 60 for some motions may not apply directly to Rule 54(b), any motion for reconsideration should "be made within a reasonable time" after the order at issue. Fed. R. Civ. P. 60(c)(1); *see In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2016 WL 6806324, at *2 (D. Nev. Nov. 16, 2016) (denying motion for reconsideration under Rule 54(b) that was "not filed within a reasonable time"); *Yonemoto v. McDonald*, 2015 WL 12711230, at *1 n.3 (D. Haw. Apr. 23, 2015) (rejecting argument that "there is never a time limit to file a motion for reconsideration" under Rule 54(b)). And the deadlines in Rules 59(e) and 60 should inform the analysis of whether a delay is reasonable under Rule 54(b)—here, Rule 60's one-year deadline for motions based on "newly discovered evidence" is especially relevant. Fed. R. Civ. P. 60(b)(2), (c)(1); *see In re W. States*, 2016 WL 6806324, at *2 ("Rule 54(b) cannot be read to render superfluous the standards governing relief mandated by Rule 60"), *rev'd in part on other grounds*, 725 F. App'x 560 (9th Cir. 2018). For that reason, "timeliness, or lack thereof, is a consideration in analyzing this motion." *Santoro v. OCWEN Loan Servicing, LLC*, 2017 WL 6501860, at *4 (D. Or. Dec. 18, 2017); *see Forte*, 2018 WL 1036403, at *3 (denying reconsideration because party's "arguments regarding . . . his delay in filing the motion for reconsideration are not convincing").

Far from filing her motion within a reasonable time after the Court's September 2018 order, Relator delayed for *four years*. This Court dismissed the claims at issue on purely legal grounds (Opp. 10 n.4), so there is no justification for that delay. Relator did not need *factual* discovery to identify any problems with the Court's *legal* conclusions. But even if discovery could be relevant, she waited almost one year from the close of fact discovery to file her motion. (The true delay is almost certainly even longer, since Relator likely received the evidence she now cites before the close of discovery). And the somewhat more recent close of expert discovery is also no excuse because reconsideration depends on when the moving party had "possession" of "the evidence upon which the expert's testimony was based," not when the party had her expert analyze that evidence. *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 212 (9th Cir. 1987).

Relator's delay was not reasonable under the circumstances. *See In re W. States*, 2016

WL 6806324, at *2 (finding nine-month delay after discovery of new facts unreasonable); *Santoro*, 2017 WL 6501860, at *4 (finding two-year delay after court's ruling unreasonable). Because Relator unreasonably delayed her motion for reconsideration and she has no "convincing" excuse for that delay, the Court can and should deny the motion for that reason without any need for further analysis. *Forte*, 2018 WL 1036403, at *3.

**B.  Relator's Evidence Is Irrelevant to the Court's Legal Interpretation of the QZ Modifier.**

The Court dismissed Relator's claims against PST Services based on its interpretation of "[t]he requirements of the Manual," which it correctly described as a "legal rather than factual question[]." (Dkt. 95 at 10 n.4.) For that reason, the Court expressly held that its ruling did "not depend on information produced during discovery." (*Id.*) Yet Relator now argues that "information produced during discovery" (*id.*) proves the Court erred in its legal conclusion. Not so. The supposedly new *factual* evidence Relator cites is irrelevant to the *legally correct* interpretation of the Manual's plain language. That evidence thus provides no basis to reconsider the Court's resolution of "legal rather than factual questions." (*Id.*)

As this Court correctly recognized, Relator's allegations could not possibly state a claim against PST Services if the Manual allows the QZ modifier to be used for CRNA services that are supervised but not medically directed by an anesthesiologist. "[I]f none of [PST Services'] alleged conduct is contrary to what the regulations permit, there can be no violation." (Order at 9.) And "what the regulations permit" (*id.*) is a "legal question" for the Court to decide. *Etemadi v. Garland*, 12 F.4th 1013, 1026 (9th Cir. 2021). None of Relator's supposedly new evidence is relevant to that legal question. *See, e.g., Cachil Dehe Band of Wintun Indians of Colusa Indian Comm'y v. California*, 649 F. Supp. 2d 1063, 1072-73 (E.D. Cal. 2009) (denying reconsideration of order granting judgment on pleadings because new evidence was irrelevant to court's legal interpretation of contract's "ordinary meaning"); *Reger Dev. v. Nat'l City Bank*, 2009 WL 10710826, at *2 (N.D. Ill. June 18, 2009) (denying motion to reconsider dismissal of complaint because "newly discovered facts" were "not material" to legal interpretation of promissory note); *see also Keyes v. Nationstar Mortg., LLC*, 2021 WL 2651946, at *5-6 (D.N.J. June 28, 2021) (denying motion to reconsider dismissal of complaint based on "'newly discovered evidence'"

because "evidence was entirely irrelevant" to purely legal basis for dismissal); *Hayes v. Frontera Produce, Ltd.*, 2014 WL 3615174, at *4 (M.D. La. July 18, 2014) (denying motion to reconsider dismissal of complaint based on newly discovered facts when "as a matter of law it is clear that no relief could be granted under any set of facts").

Notably, Relator cites no new legal authority to argue in favor of reconsideration. Instead, she cites the opinions of a single employee of McKesson Corporation, one private Medicare Administration Contractor, and Relator's own expert witness. (Harris Decl. ¶¶ 6-12.) But if those opinions conflict with the Court's decision—and, as explained below, they mostly do not—they are legally wrong for all the reasons this Court explained when rejecting Relator's interpretation of the Manual. (Order at 10-11.) This Court has already interpreted "the requirements of the Manual." (*Id.* at 10 n.4.) Relator should not be asking this Court to "rethink" its interpretation, *Forte*, 2018 WL 1036403, at *1, four years later, based on the subjective opinions of private actors with no authority to interpret or enforce the governing regulations, *Cachil Dehe Band*, 649 F. Supp. 2d at 1072-73; *Reger Dev.*, 2009 WL 10710826, at *2.

**C.**     **Relator's Evidence Is Not New and Does Not Support Her Argument.**

Even if Relator's evidence were relevant to the meaning of the Manual, she misstates that evidence. The three categories of supposedly "new evidence" Relator cites are (1) an article by McKesson's former compliance director, Courtney Reasoner, and guidance from Noridian Health Care Solutions, (2) deposition testimony, and (3) Relator's expert witness's opinions. (Harris Decl. ¶¶ 6-12.) But none of that evidence is new, and none of it supports Relator's argument that the QZ modifier can never be used for CRNA services that are supervised but not medically directed by an anesthesiologist. Other than her expert's irrelevant legal opinion, all of Relator's evidence is consistent with the Court's holding that "the most natural reading of the Manual is that unless the service was medically directed, the QZ modifier may be used." (Order at 10.)

***1. Article and Guidance.*** Reasoner's article and Noridian's guidance are not "newly discovered evidence," as Rule 54(b) requires. *Freeman*, 2020 WL 2306581, at *1. Reasoner's article was published in 2014, is publicly available online, and discusses CMS guidance from

before 2014.[1] The Noridian guidance is also publicly available online, and Relator does not claim that it was created after September 2018.[2] Relator says she identified these public materials in discovery, but "they could have been discovered with reasonable diligence" before the Court dismissed her claims. *Coastal Transfer*, 833 F.2d at 212. Because Relator cannot prove these materials "did not exist" previously and cannot explain why they "were not shown" until four years after the Court's dismissal order, they cannot support reconsideration. L.R. 230(j).

In any event, Relator mischaracterizes these materials. Relator quotes one sentence from Reasoner's article, which states: "Where a physician medically directs anesthesia services and fails to meet all requirements or exceeds the limit of four concurrent rooms, payment *may* be made under the Medical Supervision benefit." (Harris Decl. ¶ 7 (emphasis added).) But even that cherry-picked sentence does not say that payment may *not* be made under the QZ modifier. To the contrary, the article later explains that "some payers will allow a service to be billed as non-medically directed by the CRNA (QZ modifier) if a physician fails to meet all of the medical direction requirement[s] while directing 4 concurrent procedures or fewer." The article, therefore, confirms that when an anesthesiologist supervises but does not medically direct CRNA services, the QZ modifier is permissible under the Manual even if the AD modifier might also be appropriate.[3] Noridian takes the same position, explaining that "modifier QZ is not used by a CRNA when he/she is the non-physician anesthetist *with medical direction by a physician*."

---

[1] Courtney Reasoner, *Billing Guidelines vs. Conditions of Participation*, https://moana.org/wp-content/uploads/2020/09/CMS-AAs-Reimbursement-Ratios-2014.pdf. The file name indicates that the article was published in 2014, and the article attaches a CMS press release issued in June 2013.

[2] Noridian Healthcare Solutions, *Anesthesia and Pain Management*, https://med.noridianmedicare.com/web/jeb/specialties/anesthesia-pain-management. Relator's motion also references a blog post from CIPROMS Medical Billing (Mot. 10), but her counsel's declaration does not identify that post as "new or different facts," so it cannot be considered under Local Rule 230(j). In any event, the CIPROMS post has been publicly available since at least January 2019. CIPROMS Medical Billing, *Medical Direction, Medical Supervision, and Other Things to Know for Anesthesia Care Team Billing*, https://www.ciproms.com/2019/01/medical-direction-medical-supervision-and-other-things-to-know-for-anesthesia-care-team-billing/. Relator cannot explain why she waited until May 2022 to raise it in court.

[3] Relator also mentions an "e-mail . . . written by" Reasoner (Mot. 9), but she does not submit or even quote from the email. Relator's self-serving description of the email (Harris Decl. ¶ 6) falls far short of her burden to "present to the Judge . . . the material facts" supporting her motion, L.R. 230(j), especially given her mischaracterizations of the other evidence she cites.

OPPOSITION TO RELATOR'S MOTION FOR RECONSIDERATION

1    Noridian Healthcare Solutions, *supra* n.2 (emphasis added). The language that Relator quotes

2    defines "[m]edical supervision" but says nothing about which modifier may be used for those

3    services. (Mot. 10.) That is consistent with the Court's correct holding that the QZ modifier is not

4    limited to "services performed in the absence of supervision by an anesthesiologist" and may be

5    used "unless the service was medically directed." (Order at 10.)[4]

6         **2. Depositions.** The incomplete deposition excerpts that Relator submits all relate to

7    Kaweah Delta Medical District's bylaws, which Relator claims prohibited "Independent CRNA

8    Services." (Mot. 11-12.) That is not "newly discovered evidence" that could support

9    reconsideration. *Freeman*, 2020 WL 2306581, at *1. Relator's First and Second Amended

10   Complaints both already alleged that Kaweah's bylaws "prohibited independent CRNA practice

11   and mandated the stricter requirement that CRNAs be supervised." (Dkt. 41 ¶ 48; SAC ¶ 48; *see*

12   *also* SAC ¶¶ 49, 101, 109-10.) This Court accepted the truth of those allegations. (Dkt. 70 at 6;

13   Order at 3-4.) But it held those allegations, even if true, could not support a claim for relief. (Dkt.

14   70 at 15-16; Order at 8.) Because the Court accepted that Kaweah's bylaws prohibited

15   independent CRNA services, deposition testimony to the same effect adds nothing to the facts

16   this Court considered when dismissing Relator's claims. In any event, Kaweah's bylaws have no

17   bearing on the Manual's distinct requirements for using the QZ modifier.

18        **3. Expert Opinions.** The opinions of Relator's expert are also not "newly discovered

19   evidence." *Freeman*, 2020 WL 2306581, at *1. Nothing prevented Relator from seeking and

20   submitting her own expert's opinions about "the proper billing modifiers to be used" (Mot. 13;

21   Harris Decl. ¶ 10) before opposing PST Services' motion to dismiss, so those opinions are "not

22   truly newly-discovered." *Phillips v. City of Fairfield*, 2006 WL 335472, at *2 (E.D. Cal. Feb. 10,

23   2006); *accord Coastal Transfer*, 833 F.2d at 212. More fundamentally, Relator's expert's

24   opinion is beside the point, because the Manual's meaning is a legal question for the Court to

25

26   [4] If the CIPROMS post could be considered, it is just a blog post from a private medical software
     and billing services company in Indiana. The post does not contain any binding legal guidance that
27   contradicts the Court's correct interpretation of the Manual. The post addresses the QZ modifier
     only in the context of a physician and CRNA both providing full care, which are not the
28   circumstances here. The post does not claim that the QZ modifier may not be used when a CRNA
     is supervised.

resolve based on the Manual's text. (Order at 10 n.4); *see United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, 2021 WL 802086, at *3 (E.D. Wash. Jan. 6, 2021) ("Experts generally may not testify on pure issues of law, such as the meaning of statutes or regulations." (cleaned up)).

     **D.**     **Relator Will Suffer No "Manifest Injustice" If Her Motion Is Denied.**

     Even if Relator had identified relevant new evidence, her motion should still be denied because she "has not demonstrated that reconsideration is necessary to prevent manifest injustice." *Forte*, 2018 WL 1036403, at *3. Relator argues that manifest injustice exists because this Court's "error . . . allowed [PST Services] to escape liability." (Mot. 15.) This Court's decision was entirely correct. But even if it were not, reconsideration "is not a substitute for an appeal or an avenue in which to attack some perceived error of the court." *Vaughn v. Giurbino*, 2009 WL 382979, at *1 (E.D. Cal. Feb. 2009); *see Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 2020 WL 6043935, at *5 (E.D. Cal. Oct. 13, 2020) (holding "legal error" is not "manifest injustice").

**IV.**     **CONCLUSION**

     The Court should deny Relator's motion for reconsideration.


Dated:  May 31, 2022                  KING & SPALDING LLP


                                     By: /s/ Taylor E. Whitten

                                       Attorneys for Defendant
                                       PST Services, LLC