Wilmer J. Harris, SBN 150407
wharris@sshhlaw.com
Sarah L. Dawley, SBN 325897
sdawley@sshhlaw.com
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
715 Fremont Ave., Suite A
South Pasadena, CA. 91030
Telephone No.: (626) 441-4129
Facsimile No.: (626) 283-5770
[Additional counsel on following page]

Attorneys for Plaintiff Nicolle O'Neill

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES and the STATE OF CALIFORNIA *ex rel.* NICOLLE O'NEILL<br><br>Plaintiffs/Relator<br><br>vs.<br><br>SOMNIA, INC., PRIMARY ANESTHESIA SERVICES, PST SERVICES LLC, BYRON MENDENHALL, M.D., QUINN GEE, M.D., and DOES 1 through 10, inclusive<br><br>Defendants. | Case No. 1:15-CV-00433-DAD-EPG<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELATOR'S MOTION FOR RECONSIDERATION**<br><br>**Judge Dale A. Drozd** |

Andrea Gold, *appearing pro hac vice*
agold@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D. C. 20036
Telephone No.: (202) 973-0900
Facsimile No.: (202) 973-0950

Michael Seplow, SBN 150183
mseplow@sshhzlaw.com
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
9415 Culver Blvd. #115
Culver City, CA 90232
Telephone: (310) 396-0731
Facsímile: (310) 399-7040

Attorneys for Plaintiff Nicolle O'Neill

---

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELATOR'S MOTION FOR RECONSIDERATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Relator knows that motions for reconsideration should be infrequently brought and even more infrequently granted. With good reason, courts clearly disfavor giving litigants a "second bite of the appeal" and promoting having an appellate court perform any unnecessary review of a district court ruling. Relator well knows that this consideration weighs even more heavily to a Court such as this one laboring under the most extreme conditions.

Relator has taken the unusual step and brought the instant motion because the circumstances of the instant case are truly exceptional: (1) controlling guidance from the Medicare Administrative Contractor ("MAC") with jurisdiction over California health care facilities and (2) direct admissions from both sets of Defendants, establish liability against Defendant PST Services, LLC ("PST") in this action. There can be no doubt after review that the Court's order dismissing this action against PST constituted clear error and that failing to reconsider the order would result in manifest injustice. Accordingly, Relator's motion is the rare motion for reconsideration that must be granted in full.

This case presents the extraordinary situation where the MAC with jurisdiction over the billing in this matter clearly set forth a rule that barred PST from seeking the reimbursements they received for thousands of claims. When the medical records reflect that an anesthesiologist was medically directing a Certified Registered Nurse Anesthetist ("CRNA") but failed to satisfy each of the seven Tax Equity and Fiscal Responsibility Act ("TEFRA") requirements, that is known as failed medical direction. Unbeknownst to the Court and Relator at the time of the motion to dismiss hearing, there was controlling guidance that squarely addresses the circumstances of the instant case.[1]

Specifically, MAC Noridian HealthCare Solutions ("Noridian") issued a Local Coverage Determination that "[m]edical supervision occurs when the anesthesiologist is involved in more

---

[1] At the hearing of this matter, PST's counsel told the Court that Noridian guidance supported his client's claim that QZ is a "catch all" modifier appropriate even where an anesthesiologist supervised the CRNA. Dkt. #88 (Transcript of Hearing of May 1, 2018) at pp. 4:02-21.

1  than four concurrent cases and **when not all seven services under medical direction are**
2  **performed**."[2] (Harris Decl., ¶ 8.) (emphasis added). Thus, it is now clear that in circumstances of
3  failed medical direction anesthesia providers may not charge the government at the higher
4  reimbursement rate for CRNA practice using the QZ modifier, but must settle for the lower
5  reimbursement arising from using the medical supervision modifier, AD. Because Defendants
6  billed QZ for failed medical direction, this Local Coverage Determination compels a conclusion
7  that Defendant PST submitted claims for payment in direct violation of the False Claims Act.

8  Moreover, outright admissions by the Defendants themselves that they billed the
9  government for services that that they did not provide are indeed rare and exceptional events. Yet,
10 this occurred in the instant case. The issue before the Court on the motion to dismiss and now is
11 whether defendants may bill the government at the higher reimbursement level for CRNA practice
12 using the QZ modifier when an anesthesiologist purports to medically direct the CRNA but fails to
13 comply with the requirements[3] for doing so. After grappling[4] with this issue, the Court rejected
14 Relator's claim that billing QZ in failed medical direction circumstances was fraudulent because
15 the QZ modifier is a representation to the government that no anesthesiologist was either
16 medically directing or medically supervising the CRNA.

17 During the course of litigating this matter against Somnia and affiliated Defendants,
18 Relator discovered that Defendant PST's own compliance director, Courtney Reasoner,
19 acknowledged in an article she wrote[5] that, QZ is **not** an appropriate billing modifier where the
20 patient record documents either medical direction or medical supervision by an anesthesiologist,
21 the very circumstances Relator alleges here. Similarly, Somnia anesthesiologists specifically
22 acknowledged that medical supervision was the anesthesia service being rendered at Kaweah
23 Delta Medical Center during the times relevant to this action. (Harris Decl., ¶ 13, Exh. 1: Gee Tr.
24 at 71:14-21, 72:5-25.) Thus, both the governing MAC's express guidance and the admissions of

---

[2] https://med.noridianmedicare.com/web/jeb/specialties/anesthesia-pain-management

[3] The Court's order sets the seven TEFRA requirements, each of which must be documented in patient charts for reimbursement as medical direction to be proper. Dkt. # 70 at 2:21-4:02.

[4] *See, e.g.,* Dkt. #88 (Transcript of Hearing of May 1, 2018) at 4:02-05, 8:03-04, 17:14-18:03.

[5] *See* https://moana.org/wp-content/uploads/2020/09/CMS-AAs-Reimbursement-Ratios-2014.pdf

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELATOR'S MOTION FOR RECONSIDERATION
2

1  both sets of defendants compel the conclusion that Relator has indeed stated plausible claims for
2  relief against PST.
3      For these reasons, Relator asks this Court to reconsider its order of dismissal and deny
4  PST's motion to dismiss.  The proposed Third Amended Complaint clearly sets forth clear False
5  Claims Act liability in this case against PST, and, accordingly, the Court should permit Relator to
6  pursue her action on behalf of the federal and state governments.

## II. THE GOVERNING MAC REQUIRED USE OF THE MEDICAL SUPERVISION MODIFIER, NOT QZ, UNDER THE "FAILED MEDICAL DIRECTION" SCENARIO ALLEGED IN THIS CASE.

### A. Noridian's Local Coverage Determination Controls in This Case.

The Ninth Circuit has clearly directed that Local Coverage Determinations issued by MACs are controlling in the MAC's region. *Agendia, Inc. v. Becerra*, 4 F.4th 896, 897 (9th Cir. 2021) ("Medical providers submit their claims for reimbursement to a . . . MAC, a private entity that processes claims in a geographic region assigned by HHS."). Most significantly, a "local coverage determination governs only the issuing [MAC]'s claims adjudications. 42 U.S.C. § 1395ff(f)(2)(B). . . Still, qualified independent contractors, ALJs, and the Medicare Appeals Council all owe substantial deference to a relevant local coverage determination and, if they decline to apply that determination, must explain their reasons. 42 C.F.R. §§ 405.968(b)(2)-(3), 405.1062(a)-(b)." *Agendia, Inc.*, 4 F.4th at 898.

There is no dispute in this case that Noridian is the MAC with jurisdiction over the claims submitted on Somnia's behalf by PST in this case.  Accordingly, controlling Ninth Circuit precedent requires this Court to defer to Noridian's guidance in ruling on this matter.

### B. The Evidence Is Undisputed That PST Submitted Claims in Direct Violation of The Mac's Local Coverage Determination.

Discovery has revealed that the medical records for Medicare patients purported to reflect medically directed anesthesia services. However, the same records reflected a total failure to comply with the TEFRA documentation requirements. The MAC with jurisdiction over the Kaweah Delta Medical Center required use of the less lucrative AD code in these instances of

"failed medical direction"—where an anesthesiologist purported to medically direct CRNAs but failed to comply with the requirements for billing medical direction, including compliance with the TEFRA regulations.

Defendant's opposition mounts no serious attack on the Local Coverage Determination that governed Medicare's obligation to reimburse the anesthesiologists at Kaweah Delta. Defendants do not cite, much less discuss, the Noridian guidance upon which Relator relies: "Medical supervision occurs when the anesthesiologist is involved in more than four concurrent cases and when not all seven services under medical direction are performed."[6] (Harris Decl., ¶ 8.) The omission is telling: the Local Coverage Determination diametrically opposes the legal conclusion PST urged, and the Court adopted, in considering the motion to dismiss. As such, the Court's ruling constitutes clear error which should be remedied before the parties must proceed to a costly and length appellate proceeding.

Defendant's claim that they were entitled to ignore Noridian's guidance and choose the more lucrative QZ modifier defies logic. The governing MAC prescribes the less lucrative medical supervision billing for governmental reimbursement under the scenario Relator alleges—failed medical direction. PST could not simply decide to seek a larger reimbursement in the face of clear Noridian guidance.

Defendant similarly fails to address the most relevant statement from its Compliance Director:  Tellingly, PST fails to address this statement from Courtney Reasoner:  CRNA services can be billed with a QZ modifier **only if it was documented that the CRNA was not medically directed *or medically supervised*.** (Harris Decl., ¶ 6.) (emphasis added). Ms. Reasoner thus acknowledged that using the more lucrative QZ modifier is inappropriate when the records reflect either medical direction or supervision—just as Relator contended. Moreover, the medical records here specifically attest to medical direction and medical supervision of CRNAs. Faced with the opportunity to obtain a larger reimbursement than Somnia deserved, PST concealed the anesthesiologists' direct participation[7] and used the inapplicable QZ modifier. Again, Defendant's

---

[6] https://med.noridianmedicare.com/web/jeb/specialties/anesthesia-pain-management

[7] Noridian guidance makes clear that all providers of anesthesia services must be accounted for

failure to address the actual argument set forth in the moving papers demonstrates the bankruptcy of its position.

### 1. Contrary to Defendant's Argument, Depositions of Somnia/PAS's Witnesses Revealed that Somnia Charged the Government for More Expensive Anesthesia Services Than Somnia Provided to Patients.

Contrary to PST's arguments, the deposition testimony of its co-Defendants is not offered to show violations of Kaweah's bylaws; instead, they reveal the actual practice in Kaweah's surgical suites that form the basis for reimbursement from the federal and state governments. The anesthesiologists uniformly testified about the actual practice each had for medically directing or medically supervising CRNAs at Kaweah until the bylaws were changed. (Harris Decl. ¶ 13, Exh. 1, Gee Tr. at 26:22-27:9, 28:24-30:15, 32:2-9, 72:5-25; ¶ 14, Ex. 2, Mendenhall Tr. at 17:15-18:9; ¶ 15, Exh. 3: Dorin Tr. at 41:20-22) The Third Amended Complaint alleges that Defendant billed the government using the QZ modifier to trigger a higher rate of reimbursement than Somnia had earned. (Harris Decl., ¶ 16, Ex. 4: Proposed TAC at ¶ 35-47, 66-75, 145-150). Defendant's effort to deflect the devastating effect of the anesthesiologists' admissions thus fails miserably.

### 2. Evidence Proffered from Relator's Expert is Relevant to Demonstrate How Medical Billing Professionals Apply the Local Coverage Determination.

Defendant's attack on evidence derived from Relator's expert fares no better. Relator's expert demonstrates how medical billing professionals apply the Noridian Local Coverage Determination regarding medical supervision billing for failed medical direction. Relator offers this expert opinion not to stand alone in opposition to the Court's order of dismissal. Instead, this opinion reflects how billing professionals address the Local Coverage Determination—which the Court did not have the benefit of considering in coming to its conclusions. Viewed in the proper light, it is at once clear that Ms. Henricksen's opinion constitute useful information to the Court to facilitate its construction of the Local Coverage Determination that specifically governs the outcome in this case.

---

every patient encounter in order to receive reimbursement.
https://med.noridianmedicare.com/web/jeb/specialties/anesthesia-pain-management.

1    Furthermore, Defendant makes no mention (nor attempts an explanation) of why Somnia
2  anesthesiology services were ever billed using the medical supervision modifier when Somnia
3  could simply have chosen to procure a higher recovery by using the "catch all" QZ modifier. As
4  stated in the moving papers, there would be no basis ever to bill for medical supervision using the
5  AD modifier created by the government if medically supervised anesthesia services could
6  interchangeably be billed with the more profitable QZ modifier.

## III. RECONSIDERATION OF THIS COURT'S ORDER IS NECESSARY TO CORRECT CLEAR ERROR AND PREVENT MANIFEST INJUSTICE

Relator requests the Court to address the manifest injustice that will arise if it does not correct its ruling. The Eastern District of California applies the Ninth Circuit's standard of review similar to those used with respect to Rule 60(b) to reconsider its prior order granting summary judgment under Rule 54(a). *Doutherd v. Montesdeoca*, No. 2:17-cv-02225 KJM JDP, 2021 U.S. Dist. LEXIS 86433, at *7 (E.D. Cal. May 4, 2021); *see also Jadwin v. Cnty. of Kern*, No. 07-CV-0026-OWW-DLB, 2010 U.S. Dist. LEXIS 30949, at *9 (E.D. Cal. Mar. 31, 2010) (when reconsidering under Rule 54(b), district courts look to standards under Rule 60(b) for guidance). Reconsideration is appropriate when "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, **or** (3) if there is an intervening change in controlling law[, or] other, highly unusual circumstances warranting reconsideration." *Doutherd* at *7 (*citing Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262-63 (9th Cir. 1993)).). Indeed, absent a showing of manifest injustice, the court will not disturb its prior ruling. *Id.* at 8 (citing *Advanced Steel Recovery, LLC v. X-Body Equip., Inc*., No. 2:16-cv-00148-KJM-JDP, 2020 U.S. Dist. LEXIS 189650, at *5 (E.D. Cal. Oct. 13, 2020).). Accordingly, Relator's demonstration of clear error and manifest are more than sufficient to justify granting this motion for reconsideration.

Relator's showing demonstrates clear error and manifest injustice. District courts within the Ninth Circuit have addressed reconsideration under Rule 54(b) through a determination of manifest injustice such as in *Greenspan v. Fieldstone Fin. Mgmt. Grp., L.L.C*., No. 3:17-CV-233-PK, 2018 U.S. Dist. LEXIS 214308 (D. Or. Aug. 22, 2018). *Greenspan* describes "manifest

1   injustice" for courts of the Ninth Circuit as "very nearly synonymous with 'clear error,'" and what
2   "would occur only when a party suffers clear and significant prejudice to or impairment of a
3   protected right or interest." And "clear error," as defined by the Ninth Circuit, occurs when "the
4   reviewing court on the entire record is left with the definite and firm conviction that a mistake has
5   been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (citing *United
6   States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

7         Other circuits are in accord. The Eleventh Circuit similarly finds that manifest injustice in
8   cases reconsidering interlocutory appeals is "synonymous with the plain error standard of review."
9   *United States v. Jackson*, 669 F. App'x 544, 544-45 (11th Cir. 2016). In *Jackson*, the court
10  reconsidered an untimely appeal of the district court's denial of a motion for sentence reduction
11  because the plaintiff successfully demonstrated manifest injustice. Plaintiff Jackson should have
12  been eligible for sentence reduction. However, the district court had relied upon an inapplicable
13  sentence guidance range. Even though defendant's motion was untimely, reconsideration was
14  granted to prevent manifest injustice. This review of case law demonstrates that when a party
15  establishes clear error and manifest injustice courts must reconsider past rulings over objections of
16  untimeliness.

17        This case presents an even more compelling scenario for reconsideration given the
18  continued pendency of the case against the Somnia Defendants. The Court denied Relator's
19  motion to certify for interlocutory appeal its order granting PST's motion to dismiss, which was
20  not opposed by either set of Defendants, on the ground that the issues in the ongoing case are
21  intertwined with the issues sought to be appealed. Dkt. # 117, Ord. Den Mot. For Entry of Final J.
22  at pp. 5-6. The revelations detailed above, both in terms of the controlling Local Coverage
23  Determination and the outright admissions by the defendants, proved the Court correct.
24  Moreover, parties should not lightly impose upon an already burdened Court the task of
25  addressing a motion for reconsideration unless, and until, the factors in favor of doing so are
26  overwhelming.  That is certainly the case now.  Relator thus respectfully requests reconsideration
27  of the dismissal order <u>and</u> denial of PST's motion to dismiss.
28  //

## IV.     CONCLUSION

For these reasons, Relator respectfully request the Court grant her Rule 54(b) Motion for Reconsideration and allow Relator to file her Third Amended Complaint.

DATED: June 10, 2022                    SCHONBRUN SEPLOW HARRIS
                                        HOFFMAN & ZELDES LLP

                                        TYCKO & ZAVAREEI LLP

                                              */s/ Wilmer J. Harris*
                                        By: _____
                                            Wilmer J. Harris
                                            Michael D. Seplow
                                            Andrea Gold
                                            Attorneys for Relator/Plaintiff, Nicolle O'Neill