**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 3 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA; STATE OF CALIFORNIA EX REL.; NICOLE O'NEILL,<br><br>        Plaintiff-Appellant,<br><br> v.<br><br>PST SERVICES LLC,<br><br>        Defendant-Appellee,<br><br> and<br><br>SOMNIA, INC.; PRIMARY ANESTHESIA SERVICES; MCKESSON CORPORATION; ROBERT GOLDSTEIN, M.D.; ROY WINSTON, M.D.; BYRON MENDENHALL, M.D.; QUINN GEE, M.D.; MARGARET VASSILEV, M.D.,<br><br>        Defendants, | No. 23-15973<br><br>D.C. No. 1:15-cv-00433-LHR-EPG<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Lee H. Rosenthal, District Judge, Presiding

Argued and Submitted December 5, 2024
San Francisco, California

Before: COLLINS, VANDYKE, and MENDOZA, Circuit Judges.

Relator Nicole O'Neill appeals the district court's judgment dismissing her

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

*qui tam* action against Defendant PST Services LLC ("PST"), which she brought on behalf of the United States and the State of California under, respectively, the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the California False Claims Act, CAL. GOV'T CODE § 12650 *et seq*. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

 1. In her operative Second Amended Complaint, O'Neill alleged that, in billing for anesthesia care at Kaweah Hospital in Visalia, California, PST used a "QZ modifier" to describe care provided by a Certified Registered Nurse Anesthetist ("CRNA") under medical supervision of a Medical Doctor of Anesthesiology ("MDA"), even though this code represented to the government "that a CRNA, alone and without any supervision by an anesthesiologist, performed the services in question." According to O'Neill, such care should have been billed using a "QX" code for the CRNA and an "AD" code for the MDA. Instead, PST "would drop the MDA's modifier entirely" and list only the QZ modifier. O'Neill alleged that, by using the QZ modifier to falsely certify that the CRNA acted without medical supervision, PST submitted false claims and made false statements material to such claims. *See* 31 U.S.C. § 3729(a)(1)(A), (B). We conclude that O'Neill failed to allege sufficient facts to support this theory of falsity. And because falsity is an essential element of all of her claims against PST, *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899, 902 (9th

Cir. 2017); *State of California v. Altus Fin.*, 116 P.3d 1175, 1184 (Cal. 2005), the district court correctly dismissed those claims.

The Medicare Claims Processing Manual ("Claims Manual") published by the Centers for Medicare & Medicaid Services ("CMS") lists two payment modifiers that "are used by qualified nonphysician anesthetists"—which includes CRNAs—"when billing for anesthesia services." *See* Claims Manual, ch. 12, § 140.3.3; *see also id*. § 140.1. The first modifier is "QX," which the manual describes as "Qualified nonphysician anesthetist service: With medical direction by a physician." *Id*. § 140.3.3. The second modifier is "QZ," which the manual describes as "CRNA service: Without medical direction by a physician." *Id*. As relevant here, "medical *direction*" is defined in the regulations to mean that the MDA performs certain tasks and "directs qualified individuals" in no more than "four concurrent cases." 42 C.F.R. § 414.46(d)(1)(ii) (emphasis added). "If the physician medically supervises more than four concurrent anesthesia services," or does not otherwise meet the criteria for medical direction, he or she is said to "medically *supervise*[] anesthesia services," rather than to medically direct them. *Id*. § 414.46(f) (emphasis added).

On its face, the Claims Manual appears to contradict O'Neill's assertions that the "QX" modifier should be used for medically *supervised* CRNA services and that the QZ modifier should not be used for such services. As O'Neill herself

3

agrees, a CRNA who is "medically supervised" is not being "medically directed" within the meaning of the regulations. Accordingly, the service performed by a medically supervised CRNA is literally "CRNA service: Without medical direction by a physician," which would seemingly make it eligible for the QZ modifier under the Claims Manual. And because, under the manual, the QX modifier applies when the CRNA service is performed "*With* medical direction," it would arguably be inappropriate to use that modifier for medically supervised CRNA services, which by definition lack the requisite medical direction.

O'Neill argues that, because the Claims Manual lacks the binding force of a statute or regulation, its use of particular language to describe the QZ and QX modifiers does not preclude a conclusion that PST and other industry participants nonetheless understood, as a *factual* matter, that the QZ modifier was not to be used for medically supervised CRNA services. According to O'Neill, it is understood among the relevant industry participants that, notwithstanding the literal wording used in the Claims Manual, the QZ modifier is reserved for situations in which the CRNA "works *independently*." The problem with this theory is that the SAC wholly fails to plead sufficient facts to support it under the standards of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), much less those of Federal Rule of Civil Procedure 9(b). On this point, the SAC's allegations are largely conclusory and lacking in supporting factual detail.

4

O'Neill also contends that it was "legally false" to "omit the anesthesiologist from the bill and instead list only the CRNA involved in the care along with the QZ modifier." But she has pointed to no law or regulation that supports the view that an otherwise properly coded charge for a CRNA's anesthesia service is somehow false merely because an MDA who supervised, but did not direct, the procedure does not *also* submit a claim for payment. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 186–87 (2016) (stating that a theory of express or implied false certification of compliance with payment requirements must identify a violation of "statutory, regulatory, or contractual requirements"). O'Neill points to § 140.3.4 of the Claims Manual as supporting such a requirement, but that provision by its terms only addresses "medical direction," not medical supervision. She also cites § 50.D of the Claims Manual, but that merely refers to what payment "may" be allowed to an MDA who medically supervises, rather than medically directs anesthesia services; it does not state that a CRNA claim using the QZ modifier may not be submitted *unless* accompanied by a claim from the MDA for medical supervision of such services (using modifier "AD").

2. We further conclude that O'Neill's proposed Third Amended Complaint ("TAC") would not have cured these deficiencies, and on that basis, we conclude that the district court properly denied her motion for reconsideration.

The TAC alleges that in 2014 PST's compliance director had stated, in an article and elsewhere, that the QZ modifier may be used if "the CRNA was not medically directed or supervised," and that an MDA who medically supervises CRNAs "may" receive payment "under the Medical Supervision benefit." These statements do not establish that PST and others understood that the modifiers were only to be used in the way that O'Neill posits. On the contrary, the cited article elsewhere expressly states that "some payers will allow a service to be billed as non-medically directed by the CRNA (QZ modifier) if a physician fails to meet all of the medical direction requirement[s] while directing 4 concurrent procedures or fewer." The article further states that, when the MDA does not intend to medically direct the procedure, but only to "operationally supervis[e]" it, "then the case may be rightfully billed with a QZ modifier under the CRNA . . . ."

The TAC also alleges that guidance from Noridian HealthCare Solutions, a private company contracted by CMS to process claims by healthcare providers, requires that all providers involved in the procedure, including both MDAs and CRNAs, must be documented by the relevant billing modifiers. But the cited document and quoted language merely states that "[w]hen multiple *anesthesiologists* provide services . . . [t]he time for all anesthesia procedures must be combined and be sure the documentation contains all *physicians* involved" (emphasis added). This statement about documenting all MDAs involved when

6

submitting a charge for *doctors* does not support O'Neill's distinct theory about how to bill in cases of medically supervised CRNAs. With respect to the QZ modifier, the document's only specific instruction is that that modifier is not to be used by CRNAs in cases of "medical direction."

The TAC further alleges that O'Neill's "medical coding expert . . . opined that use of the QZ modifier is improper in cases where Medical Supervision actually occurred," but this conclusory assertion provides no plausible basis to infer that industry participants actually shared this view despite its lack of clear textual support in the Claims Manual. A declaration accompanying O'Neill's motion for reconsideration further noted that her expert's review of actual bills showed that at least one had been submitted using the "AD" modifier for medical supervision by a physician. But that unadorned assertion does not even address whether an accompanying claim was submitted in that instance for a CRNA and, if so, using what modifier. In any event, it does not say anything about whether submitting a QZ modifier alone was understood to be improper.

We affirm the district court judgment dismissing O'Neill's claims.

**AFFIRMED.**

7